ANTONIO MUNDO HANCE, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HONORABLE J. RIVERA BARRERAS, JUEZ, demandado.

*Número:* O-72-319          *Resuelto:* 30 de abril de 1973

*Santos P. Amadeo* y *José E. Amadeo,* abogados del peticionario; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Magda E. Haidar de Martí, Procuradora General Auxiliar,* abogados del demandado.

PER CURIAM: El peticionario, un teniente de la Policía de Puerto Rico, fue expulsado permanentemente del Cuerpo el 13 de julio de 1968 por el entonces Superintendente Salvador Rodríguez Aponte. Se le imputaron varias infracciones a las Reglas 4, 17, 22 y 24 del entonces vigente Reglamento de la Policía que se refieren al uso indebido de armas de fuego, al

atropello o actuación en contra de los derechos ciudadanos del individuo y a la observancia de conducta inmoral o desordenada en detrimento de la moral del Cuerpo. 25 R.&R.P.R. sec. 221d–16.

■ El peticionario apeló ante la Comisión de la Policía. Este organismo, previa celebración de una vista, sostuvo la resolución de expulsión dictaminada por el Superintendente. Aunque la prueba fue conflictiva, hemos comprobado que el récord sostiene el resumen de los hechos que, a grandes rasgos, hizo el tribunal a quo en sus conclusiones formuladas el 30 de junio de 1972: (¹)

"Allá para el 17 de mayo de 1968 mientras la Sra. Mundo Hance y la hija del peticionario Myrna, se encontraban de visita en la casa de Lourdes Medrano. Llegaron a la casa el joven Héctor Luis Cruz Navarro y Pedro César Morell Tolentino. Poco después llegó el peticionario y preguntó quiénes eran los jóvenes. César Morell Tolentino se retiró, permaneciendo Héctor Luis Cruz Navarro. Luego de haber sido identificado Héctor Luis como amigo de la hija del peticionario, éste lo hizo entrar en el automóvil del Teniente Mundo Hance y lo llevó a su residencia.

---

(¹) La Comisión de la Policía no formuló conclusiones de hecho. Después de hacer una relación de tres páginas sobre las distintas comparecencias de las partes a las vistas, concluyó:

"La Comisión resuelve que el querellado-apelante violó las reglas 4, 17, 22 y 24 del Reglamento de la Policía (faltas graves) y sostiene la Resolución de expulsión apelada."

Estamos enteramente de acuerdo con las expresiones del juez sentenciador en cuanto a la conveniencia de que los organismos administrativos expongan las determinaciones de hechos sobre las cuales basan sus resoluciones. Las razones prácticas de esa norma son obvias. Por un lado sirve de valiosa ayuda al Poder Judicial, en el descargue de su misión revisadora, proporcionándole una clara comprensión de la base en que descansa la decisión administrativa y, por otro, evita que el Poder Judicial se arrogue funciones de la competencia especializada del organismo administrativo. Véase, Davis, *Administrative Law Treatise*, Vol. 2, págs. 444–449.

El Teniente interrogó al joven Héctor Luis sobre sus relaciones con su hija Myrna aceptando haber tenido relaciones sexuales con ella.

Al oir las manifestaciones del joven, el peticionario lo agredió con un 'black jack'. Lo sacó del automóvil y lo condujo al interior de su casa.

Una vez en el interior de la casa, el joven Héctor Cruz volvió a ser agredido por el peticionario hasta que quedó sin conocimiento y lo montó en el automóvil que había estacionado en la marquesina. Mientras se encontraba dentro del automóvil, el Teniente sacó el revólver de reglamento y le disparó a Cruz hiriéndolo en la boca y luego en la cabeza."

Por esos hechos el peticionario fue acusado de ataque para cometer homicidio. Visto el caso ante un jurado, éste trajo un veredicto de absolución. Su primer planteamiento aquí consiste en invocar una inmunidad, supuestamente adquirida por la absolución en el referido caso criminal, contra castigos por los mismos hechos en el proceso administrativo que culminó en su expulsión del Cuerpo de la Policía Estatal. En apoyo de esa tesis cita los casos de *Ashe* v. *Swenson*, 397 U.S. 436 (1970) y *One 1958 Plymouth Sedan* v. *Pennsylvania*, 380 U.S. 693 (1965.)

■ El planteamiento es inmeritorio. Es regla general que una absolución en un proceso criminal no impide que se destituya a un funcionario o empleado público en un proceso administrativo basado en los mismos hechos que motivaron la acusación criminal. En *Cruz* v. *Garrido Morales*, 58 D.P.R. 653 (1941), sostuvimos esta norma, expresándonos así: (a la pág. 663)

"La acción criminal es independiente de la administrativa y no está la una supeditada a la otra. Sería atar de manos a todo funcionario nominador y privarle de las prerrogativas que la ley le reconoce en materia de destituciones, si las cortes estuvieran obligadas a ordenar la reposición de un empleado por el hecho de que otro tribunal le había absuelto en una criminal surgida de los mismos hechos que motivaron la destitución."

Esta es una norma de sana administración. La Comisión de la Policía como organismo cuasi-judicial tiene derecho a tomar su propia decisión independiente basada en la evidencia presentada ante ella. Planteamiento idéntico al del peticionario se ha presentado en los casos de desaforo y se ha desestimado por no estar sostenido como cuestión de derecho. Véase *In re De Castro*, 100 D.P.R. 184 (1971).

Los casos de *Ashe* v. *Swenson*, supra, y *One 1958 Plymouth Sedan* v. *Pennsylvania*, supra, citados por el peticionario no son aplicables. En *Ashe*, tres o cuatro hombres le robaron a seis personas que estaban jugando cartas. Al acusado se le acusó de robar a una de estas personas; la prueba del fiscal de que el acusado era uno de los asaltantes era débil. El jurado lo absolvió. Posteriormente, se le acusó por el robo de otra de las víctimas y el jurado lo condenó. Ashe sostenía que el segundo proceso violaba la cláusula contra la Doble Exposición de la Quinta Enmienda. El Tribunal Supremo sostuvo la alegación de Ashe y anuló la sentencia. El veredicto del jurado conllevaba necesariamente la consideración de la cuestión de si el acusado era o no uno de los asaltantes; al traer un veredicto de absolución, el jurado, sostuvo el Tribunal Supremo, determinó que el acusado no lo fue.

El caso de *One 1958 Plymouth Sedan,* supra, no tiene el alcance que le atribuye el peticionario. En ese caso unos agentes de la Junta Para el Control de Bebidas Alcohólicas de Pennsylvania, sin ninguna orden de registro, detuvieron y registraron un automóvil y encontraron cajas de licor sin que las mismas tuvieran adheridos los sellos de rentas internas. El estado radicó una solicitud de confiscación del automóvil. El tribunal de instancia determinó que los oficiales actuaron sin causa probable y que no procedía la confiscación, pues la misma dependía de la admisión de evidencia obtenida en violación de la Cuarta Enmienda de la Constitución, aplicable a los estados en virtud de la Decimocuarta Enmienda. El Tribunal Supremo de Pennsylvania revocó al tribunal

inferior por el fundamento de que la regla de exclusión de evidencia ilegalmente obtenida solamente es aplicable a procesos criminales y no a confiscaciones, que son procedimientos de naturaleza civil. Pero el Tribunal Supremo de Estados Unidos, al revocar, concluyó que la regla de exclusión es aplicable a los procedimientos de confiscación de la misma naturaleza que los envueltos en ese caso. Sostiene el peticionario que los principios del caso *One 1958 Plymouth Sedan* son igualmente aplicables al caso de autos.

Como señala el Procurador General, esto no es así. No hay nada criminal, ni ilegal en poseer un automóvil. En el mencionado caso, el hecho de transportar licores clandestinos en el automóvil es lo que condujo a solicitar la confiscación del mismo. Por lo tanto, el Estado no podía establecer un uso ilegal en ese automóvil sin utilizar la evidencia obtenida, la cual provenía de un registro ilegal. Lo uno dependía de lo otro.

Los otros casos que cita el peticionario en su alegato complementario tratan con procedimientos de confiscación posteriores a la absolución en el proceso criminal por los mismos hechos. La confiscación, aunque de naturaleza civil, se convierte en esos casos en el medio para imponer un castigo o sanción penal contra una persona ya absuelta y no disfruta de la naturaleza de un remedio.

En el caso que nos ocupa el peticionario fue expulsado del Cuerpo de la Policía mediante un proceso administrativo completamente independiente del proceso criminal. Ambos procedimientos, aunque nazcan de una misma conducta, requieren diferentes grados de prueba. La expulsión de un empleado público no está limitada a actos criminales ni la conducta del empleado tiene que ser probada más allá de toda duda razonable. No se cometió el primer error señalado.

■ En su segundo y último señalamiento de error el peticionario tilda de arbitraria, irrazonable y de castigo cruel e inusitado, prohibido por la Octava Enmienda de la Consti-

tución de los Estados Unidos, su expulsión del Cuerpo de la Policía, en vista de su excelente hoja de servicios como funcionario de ese cuerpo por más de veinte años, así como de su absolución por el jurado y otros atenuantes existentes en su caso. Entiende que la Comisión debió haber tomado estos factores favorables como atenuantes a su favor y no expulsarlo definitivamente, sino castigarlo con la pena de degradación o suspensión del Cuerpo sin sueldo por un período no mayor de seis meses.

En el caso de faltas graves, el Reglamento de la Policía disponía las siguientes medidas disciplinarias por cometer las faltas graves enumeradas en ese Capítulo: [2] (1) la expulsión permanente del cuerpo; (2) la degradación; y (3) la suspensión del cuerpo sin sueldo, por un período no mayor de seis (6) meses.

La facultad primaria de velar porque se cumpla con las disposiciones del Reglamento del Cuerpo de la Policía radica en su Superintendente y en la Comisión de la Policía como organismo apelativo, cuya actuación debe merecer nuestro mayo respeto y consideración. A la luz de todas las circunstancias envueltas, no estamos inclinados a concluir que la penalidad impuesta al peticionario estuviera carente de base o fuera totalmente arbitraria e irrazonable.

*Se confirmará la sentencia recurrida.*

Los Jueces Asociados, Señores Díaz Cruz e Irizarry Yunqué, no intervinieron.

---

[2] El nuevo Reglamento de la Policía que entró en vigor en 24 de julio de 1968, y que derogó el anterior, dispone las mismas medidas disciplinarias. 25 R.&R.P.R. sec. 221d–101.