*In re* FILIBERTO RODRÍGUEZ CARABALLO, JUEZ DE PAZ, querellado.

Número: O-76-560      Resuelto: 14 de febrero de 1978

*Héctor A. Colón Cruz,* Procurador General, *Roberto Armstrong, Jr.,* Procurador General Interino, *Justo Gorbea Varona,* Subprocurador General Interino, abogados de El Pueblo de Puerto Rico; *José Angel Cangiano* y *Pedro L. Ruiz,* abogados del querellado.

PER CURIAM: El señor Filiberto Rodríguez Caraballo fue nombrado Juez de Paz el 19 de abril de 1973 por un término de cuatro años y asignado al distrito de Santa Isabel. El 28 de diciembre de 1976 el Procurador General presentó ante este Tribunal una querella en que le formuló veintiún cargos que fueron oportunamente notificados y contestados por el querellado, quedando controvertidas las alegaciones. Por resolución de 7 de julio de 1977 designamos Comisionado

Especial al Lcdo. Luis V. Castro, ex Juez Superior, para oír
y recibir las pruebas de las partes y formular determinaciones de hechos. El 14 de diciembre de 1977 el Comisionado
Especial presentó su informe, que fue debidamente notificado
a las partes, sin que se hayan formulado objeciones al mismo.
Se desprende de dicho informe que se celebró una conferencia
con antelación al ofrecimiento de prueba en que el Procurador General desistió de varios cargos, celebrándose luego vistas en que por ambas partes prestaron testimonio numerosos
testigos y se admitió prueba documental. Dicha prueba sostiene las conclusiones de hechos del Comisionado, que pasamos a sintetizar, relacionadas con diferentes cargos formulados al querellado.

## I

■ El 20 de noviembre de 1973 el querellado formuló y
firmó solicitud de ingreso a la Cooperativa de Crédito de Salinas en que informó, entre otros particulares, ser divorciado,
tener dos dependientes, y ser "abogado juez" al cuidado [*sic*]
del Tribunal de Distrito en Salinas. Aportó $1,000 en acciones, fue aprobada su solicitud y el 28 del mismo mes solicitó un préstamo de $3,000 a dicha Cooperativa garantizado
con sus acciones y las firmas de Miguel A. Cruz, Gregorio
Aguirre y Carlos Pérez Pérez como garantizadores. Informó
ser "abogado juez" del Tribunal de Distrito de Salinas, con
sueldo de $1,500 mensuales. Obtenido el préstamo, hizo un
solo pago en su abono, por lo que sus garantizadores tuvieron
que responder por él en parte del préstamo, que ha quedado
reducido a aproximadamente $800 luego de acreditársele
además los $1,000 de sus acciones. En varios documentos el
querellado imprimió el sello del Tribunal de Distrito y firmó
como "Juez," sin especificar que era Juez de Paz.

Tanto la información dada en las referidas solicitudes de
ingreso a la Cooperativa y de préstamo, como la contenida en
los documentos con el sello del Tribunal de Distrito acusan
falsedad de parte del querellado. Informó ser divorciado y sin

embargo incluía el sueldo de su "esposa" en el ingreso informado de $1,500 mensuales. Se hizo pasar por Juez de Distrito sin serlo, titulándose como "abogado juez" a base de haber obtenido el grado de *Juris Doctor* de la Universidad Católica de Puerto Rico, sin haber revalidado. Indudablemente que la falsa información dada en su solicitud de préstamo tuvo que pesar en su aprobación y, una vez obtenida, incumplió su obligación de pagar, obligando a terceras personas a responder por él. Esta conducta es impropia de parte de cualquier persona, y lo es más de quien ocupa el cargo de juez y utiliza el prestigio de su cargo para su beneficio personal.

## II

El querellado, actuando como Juez de Paz, en diferentes fechas ordenó la excarcelación de varias personas imputadas de delito a base de la prestación de fianzas que luego no aparecieron en los expedientes remitidos al Tribunal Superior. [1] Aunque concluye el Comisionado que "esa falla administrativa ha existido en mayor o menor grado" en otros distritos judiciales, ello no justifica el incumplimiento por el querellado de su deber de asegurarse de que los pliegos de fianzas no se extraviaran y fuesen unidos en su oportunidad a los expedientes judiciales de los imputados.

Aparte de estas fallas, quedó comprobado que en dos ocasiones el querellado aprobó fianzas a cargo de compañías

---

[1] En el informe del Comisionado se relacionan las siguientes excarcelaciones ordenadas por el querellado luego de la prestación de fianzas que no aparecieron: 5 de agosto de 1974, Pedro Cordero Vázquez, infracción a la Ley de Sustancias Controladas; 11 de abril de 1975, Ariel Cruz Santiago, Ley de Sustancias Controladas; 19 de julio de 1974, Luis Antonio Bodón Laboy, hurto; 19 de julio de 1974, José Antonio Rodríguez De Jesús, violación; 18 de agosto de 1974, Pedro León Figueroa, Ley de Armas; 6 de agosto de 1974, Pedro A. Hernández Aponte, Ley de Armas; 18 y 24 de septiembre de 1974, Francisco Santiago Figueroa, ataque para cometer asesinato y otros delitos; 7 de septiembre de 1974, Luis A. Cruz Santiago, hurto mayor. Con excepción de los casos contra Francisco Santiago Figueroa, en que no se conoce quienes fueron los fiadores, en los demás casos lo fueron compañías de fianzas representadas por diferentes agentes.

fiadoras sin que el apoderado de dichas compañías firmara los documentos correspondientes; (²) y que aprobó en diferentes fechas fianzas hipotecarias prestadas a favor de diferentes imputados de delitos que gravaban una misma finca, propiedad de Antonio Olivieri Lugo, en que se hizo constar estar libre de gravámenes, no obstante que debía constarle al querellado que las propias fianzas aprobadas por él agotaban la responsabilidad de dicho inmueble. (³) Esta conducta acusa una crasa irresponsabilidad, y está reñida con la Regla 220 de Procedimiento Criminal. (⁴)

---

(²) El 26 de febrero de 1974 reconoció a la fiadora Compañía de Fianzas de Puerto Rico sin que su apoderado José A. Clavell Ruiz firmara por la corporación, en casos por Ley de Armas contra Carlos A. Lugo Ramírez; y el 25 de junio de 1975 reconoció a la misma Compañía sin que su entonces apoderada, Myrna M. Hernández, hubiese firmado, en caso seguido contra Angel Miranda Rivas por infracción a la Ley de Sustancias Controladas.

(³) El 11 de abril de 1975 aprobó fianzas hipotecarias que gravaban la referida finca del Sr. Olivieri Lugo por $6,000, a favor de un tal Santiago y por $6,000 y $4,000 a favor de José Antonio Muñiz Muñiz y Rubén Rodríguez Centeno; cuatro días después, el 15 de abril de 1975, aceptó fianzas por $6,000 y $9,000 a favor de Juan Cesáreo Rivera Torres y Miguel A. Nieves Sánchez que afectaban la misma finca; trece días después, el 28 de abril de 1975, aprobó fianza hipotecaria sobre la misma finca, por $3,000, a favor de Justino Martínez Suárez, al día siguiente, 29 de abril, aprobó fianza por $2,000 a favor de Félix Vega Torres que gravaba la misma finca; y los días 14, 16, 23 y 24 de mayo y 13 y 14 de junio del mismo año aprobó fianzas hipotecarias sobre la misma finca a favor de Erasmo Irizarry Collado, Roberto Malavé Zayas, William Hernández Ramos, Luis A. Montalvo Vázquez, Luis Rafael Morales Cruz, Cruz Santiago Pérez, Antonio De Jesús Jiménez, Edwin Colón Meléndez y Carlos A. Ríos Torres, ascendiendo las dos últimas a $20,000. En todos estos casos se hizo constar que la finca "no estaba afecta a gravamen alguno."

(⁴) Dicha Regla dispone:
"Regla 220. Fianza, Requisitos de los Fiadores
"Toda fianza será suscrita, o reconocida, ante un magistrado o secretario, según corresponda, bien por una compañía autorizada para prestar fianzas en Puerto Rico, bien por un fiador residente en Puerto Rico que posea bienes inmuebles en Puerto Rico no exentos de ejecución por un valor igual al monto de la fianza, luego de deducido el total de los gravámenes que pesen sobre dichos bienes, excepto que el magistrado o secretario ante quien se prestare la fianza podrá permitir a más de un fiador que se obliguen separadamente por sumas inferiores siempre que el total de las obli-

## III

El 23 y el 31 de diciembre de 1974 y el 14 de enero de 1975 le fueron sometidos al querellado para determinar causa probable por conducir vehículos de motor bajo los efectos de bebidas embriagantes causas contra Víctor M. Pacheco, Francisco Rosario Martínez y Félix Luis Rentas Rivera. No obstante que la prueba del aliento arrojó contenidos de alcohol de 0.16, 0.24 y 0.24 por ciento por peso, respectivamente, el querellado determinó que no había causa probable. Explicó su proceder a base de "entender que eran personas serias, quienes además me habían justificado el proceder de su conducta a mi satisfacción" y que "habían sido intervenidas por primera vez por este delito y en el descargo de mi función de impartir justicia les creí merecedores de una oportunidad." Esta explicación es socorrida y evidencia una equivocada inteligencia del deber que el querellado tenía de sus funciones como magistrado y como funcionario encargado de instrumentar adecuadamente el proceso judicial.

## IV

El cargo número 20 imputa al querellado que en mayo de 1975 recibió $100 del señor Carlos Morales Velázquez, acusado de violar el Art. 105 del Código Penal de 1974, [5] para que archivara dicha causa. El Comisionado Especial, en los párrafos 40, 41 y 42 de su informe, concluyó lo siguiente:

"40. El policía Enrique Rivera sometió al querellado allá

---

gaciones individuales equivalga a dos veces el monto de dicha fianza. Dondequiera que en estas reglas se utilice el término 'fiadores' se entenderá que lee 'fiador o fiadores.' "

[5] Dicho artículo castiga con pena mínima de un año y máxima de 5 años de reclusión a toda persona que sin intentar consumar acceso carnal cometiere cualquier acto impúdico o lascivo con un menor de 14 años de edad; o si la víctima fuere compelida al acto por fuerza física irresistible o amenazas de grave o inmediato daño corporal, o mediante el uso de medios hipnóticos, narcóticos, deprimentes o estimulantes; o si la víctima, por enfermedad o defecto mental estuviere incapacitada para consentir legalmente.

para el mes de mayo de 1975 el caso de Pueblo v. Carlos Morales Velázquez por infracción al Artículo 105 del nuevo Código Penal, siendo la perjudicada la niña de unos nueve o diez años, Magali Rivera Santiago. El querellado determinó causa probable y señaló una fianza al acusado de $500.00 que se prestó en el acto. Posteriormente, el querellado llamó a su oficina a Esteban Rivera Sierra, padre de la víctima, para aconsejarle lo que ya otras personas le habían aconsejado, que archivase el caso en bien de su hija. Esteban aceptó con la condición de que el acusado se mudara del sitio.

41. El querellado instruyó a su secretaria, Herminia Rivera Rodríguez, para que fuese donde Sonia Anés Almodóvar, la esposa del acusado, para que éste tratase de conseguir $100.00 que se necesitaban 'para arreglar el caso'. Sonia así lo hizo y como su esposo no tenía dinero consigo, en Guayama donde trabajaba, le 'cogió prestado a su jefe'. Los esposos Morales Anés le entregaron el dinero al querellado y no le pidieron recibo alguno porque confiaban en él 'porque era Juez'.

42. El Lcdo. Efraín Bermúdez, cuyo bufete queda contiguo al sitio donde estaba el Tribunal de Distrito de Santa Isabel, declaró que el querellado le entregó $100.00 para hablar con el fiscal sobre el archivo de la causa criminal pero no fue contratado por el acusado, ni por la esposa de éste ni preparó moción alguna de archivo y que luego se enteró que el querellado había archivado la denuncia."

Concluye el Comisionado, al comentar sobre el particular: "La actuación fue sospechosa pero no pasa de ser una indiscreción y una manera incorrecta de llegar a una meta razonable." No estamos de acuerdo. Independientemente de que no quedara convencido el Comisionado de que el querellado se lucrara del dinero por él recibido, su conducta es altamente reprochable y por sí sola le hace indigno de ocupar el cargo de juez.

## V

El cargo 21 imputó al querellado que el 6 de febrero de 1976, "en su oficina en el Tribunal de Paz de Santa Isabel, mediante el uso de la fuerza besó a la joven Gregoria Oppen-

heimer." Gregoria contaba entonces unos 14 años de edad. Por estos hechos se acusó al querellado del delito de agresión agravada y de ello fue absuelto en juicio celebrado ante el Tribunal de Distrito, Sala de Coamo. El cargo fue sometido al Comisionado Especial a base de la transcripción de la prueba ofrecida durante el juicio. El Comisionado concluye que ello no le pone en condiciones de pasar sobre la credibilidad de los testigos y, habiendo sido absuelto el querellado, concluye que debe ser exonerado.

■ La absolución del querellado en la causa penal no impide que por los mismos hechos se juzgue su conducta a los fines de determinar si incurrió en alguna falta de ética. *In re De Castro*, 100 D.P.R. 184, 197, 198 (1971). Convenimos, no obstante, con el Comisionado, que no se le puso en condiciones de pasar sobre la credibilidad de los testigos al estipularse por el Procurador y por el querellado que el cargo se sometiese a base de la transcripción mencionada. El resultado a que llegamos en relación con los demás cargos hace innecesario que hagamos otros pronunciamientos sobre el particular.

*Se decretará la separación permanente del querellado del cargo de Juez de Paz, efectiva la separación al día 5 de marzo de 1976, fecha en que fuera suspendido de empleo y sueldo.*

Los Jueces Asociados Señores Rigau y Dávila no intervinieron.