EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Tribunal Examinador de Médicos de Puerto Rico<br>Peticionario<br><br>v.<br><br>Dr. Luis R. Cañas Rivas<br>Recurrido | Certiorari<br><br>2001 TSPR 58 |

Número del Caso: CC-2000-428

Fecha: 23/abril/2001

Tribunal de Circuito de Apelaciones:

                                Circuito Regional V

Juez Ponente:

                                Hon. Jorge Segarra Olivero

Amicus Curiae:

                                Hon. Procurador General

Abogados de la parte peticionaria:

                                Lcdo. Gerardo M. Pavía Cabanilla
                                Lcdo. José E. Colón Rodríguez

Abogados de la parte recurrida:

                                Lcdo. Benigno Alicea Alicea
                                Lcdo. José A. de la Texera
                                Lcda. Melva A.Quintana
                                Lcdo. Demetrio Fernández

Materia: Revisión de Decisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Tribunal Examinador de
Médicos de Puerto Rico

     Peticionario

        vs.                                           CC-2000-428         Certiorari

Dr. Luis R. Cañas Rivas

     Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 23 de abril de 2001.

Tenemos la ocasión para precisar qué efectos tiene una determinación judicial de que no existe causa probable para arrestar sobre la consideración de una querella disciplinaria contra el imputado por el mismo incidente, en el contexto del ejercicio de la profesión médica.

I

El 10 de marzo de 1998 se presentó una querella ante el Tribunal Examinador de Médicos de Puerto Rico (TEM) contra el Dr. Luis R. Cañas Rivas y se le imputó que el 2 de marzo de 1998, había besado a su paciente, Wanda Liz Texidor Rodríguez, una joven que entonces tenía 18 años de edad, en contra de la

voluntad de ésta, mientras se encontraba hospitalizada en el Hospital Menonita de Aibonito. Los hechos ocurrieron delante de Alma Sierra Maldonado, quien era la compañera de cuarto de la perjudicada.

Por esos mismos hechos, el 19 de marzo de 1998 se presentó una denuncia contra el doctor Cañas Rivas por el delito de agresión agravada ante el Tribunal de Primera Instancia, Sala Municipal de Aibonito. Dicho foro inicialmente determinó que existía causa probable para el arresto, pero luego, a solicitud de la defensa, reconsideró su dictamen y decidió que no existía causa probable. Entonces el Ministerio Público sometió la denuncia referida ante un magistrado de categoría superior del mismo Tribunal de Primera Instancia, quien también determinó, el 22 de junio de 1998, que no existía causa para el arresto.

Ante esta situación, el representante legal del doctor Cañas Rivas presentó una moción ante el TEM y solicitó la desestimación de la querella que estaba pendiente allí. Argumentó que las dos determinaciones judiciales de inexistencia de causa probable demostraban que no existía evidencia alguna para sostener los hechos alegados en la querella, que supuestamente eran los mismos que habían sido alegados en las denuncias.

Después de otros trámites procesales, el 9 de marzo de 1999, se celebró una vista administrativa ante un Oficial Examinador. Allí los abogados del TEM y del querellado informaron que habían estipulado lo siguiente:

1. Que de declarar la perjudicada Wanda Texidor Rodríguez, testificaría lo mismo que declaró en el foro criminal.

2. El contenido de la transcripción de cincuenta y dos (52) páginas, de la vista en alzada para determinar causa probable para arresto.

3. El contenido de la transcripción de treinta y cinco (35) páginas, de la vista original para determinar causa probable para arresto.

4. Que de declarar la testigo Alma Sierra Maldonado, declararía lo contenido en su Declaración Jurada de dos (2) páginas, de 26 de marzo de 1998.

5. Que el Oficial Examinador escucharía el testimonio del Dr. Eduardo Ibarra.

El Oficial Examinador aceptó las estipulaciones, y recibió el testimonio del doctor Ibarra, testigo de reputación de Cañas Rivas. El 15 de junio de 1999

rindió un informe. Concluyó que el doctor Cañas Rivas había incurrido en la conducta que le había sido imputada en violación del Artículo 17(m)(1) y (10) de la Ley Núm. 22 de 22 de abril de 1931, según enmendada, 20 L.P.R.A. sec. 52, que establece que el TEM tiene facultad para suspender, cancelar o revocar una licencia a un médico por diversas razones, entre otras:

> (m) Demostrar incompetencia manifiesta en el ejercicio de la profesión o incurrir en conducta no profesional. A los efectos de este inciso el término conducta no profesional significa lo siguiente:

> (1)    Violar las reglas y reglamentos que en virtud de [esta ley] adopte el Tribunal [Examinador de Médicos] para reglamentar la práctica de la medicina en Puerto Rico;

> . . .

> (10) Hostigar, abusar o intimidar a los   pacientes. (Enfasis suplido)

El Oficial Examinador, además, citó el caso de Vélez Quiñones v. Srio. de Instrucción, 86 D.P.R. 755 (1962), a los efectos de que la acción criminal es independiente de la administrativa y que en ésta no hay que tomar en consideración el hecho de que el querellado hubiese sido absuelto en la causa criminal seguida en su contra por los mismos hechos que sirven de base al procedimiento administrativo.

El Oficial Examinador recomendó que el TEM le **revocara** la licencia al doctor Cañas Rivas. El 25 de junio de 1999, el TEM acogió el informe del Oficial Examinador, excepto la recomendación, la cual modificó para limitarla a "una suspensión de licencia por seis (6) meses, con la condición de que el Dr. Luis R. Cañas Rivas se someta a evaluaciones y tratamiento psicológico o psiquiátrico, debiendo su médico someter informes mensuales."

Inconforme con el dictamen, Cañas Rivas presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones. Este foro expidió el auto solicitado y revocó la resolución del TEM, por voto dividido de dos a uno.

El TEM acudió oportunamente ante nos, y planteó la siguiente cuestión:

> "Incidió el foro recurrido al concluir que la determinación de no causa probable para arresto por violación al Art. 95 del Código Penal (agresión) impide que el TEM enjuicie al doctor Cañas Rivas por haber violado el Art. 17 de la Ley del TEM al incurrir en conducta reñida con las ideas recibidas por buenas".

El 16 de junio de 2000 expedimos el recurso solicitado para revisar la sentencia del foro apelativo. Luego de una prórroga, la parte peticionaria presentó su alegato el 27 de octubre de 2000; el Procurador General de Puerto Rico compareció como *Amicus Curiae* el 16 de noviembre de 2000, y el recurrido presentó su alegato el 27 de noviembre de ese año. Con el beneficio de las comparecencias referidas, pasamos a resolver.

II

**En su dictamen en el caso de autos, el Tribunal de Circuito de Apelaciones señaló que la cuestión esencial que tenía ante su consideración, requería resolver si la determinación judicial de no causa probable para el arresto contra el doctor Cañas Rivas en la esfera criminal era vinculante en la esfera administrativa. A continuación señaló que la jurisprudencia de Puerto Rico establecía de modo claro que la absolución en el proceso penal no era vinculante en el campo administrativo. Indicó, sin embargo, que esa jurisprudencia no era determinativa del caso de autos porque este presentaba una situación distinta. Concretamente señaló que:**

> [e]n el caso de autos no se plantea un reclamo de inmunidad a base de una previa absolución criminal, sino a base de una previa determinación de no causa probable para arresto por los mismos hechos y por la misma prueba en que se fundamenta la querella administrativa presentada contra el recurrente.

El foro apelativo aludió a que "una mera *scintilla* de evidencia" era suficiente para sostener una determinación de causa probable para arresto, y comparó esa norma evidenciaria con la norma de que las decisiones administrativas deben estar fundadas en prueba sustancial. Hizo hincapié en que el Oficial Examinador en el caso de autos no había tenido la oportunidad de examinar el comportamiento y la credibilidad de los testigos de cargo, por lo que no estuvo en mejor posición que los jueces de instancia para aquilatar sus testimonios. Concluyó, además, que la norma de la *scintilla* de evidencia del procedimiento para arrestar era "un estándar de prueba menor que el requerido en la esfera administrativa". En vista de todo ello, resolvió entonces que "la determinación de inexistencia de causa probable para arresto contra el recurrente era suficiente para desestimar la querella

administrativa que pesaba en su contra por los mismos hechos". Es este dictamen el que tanto el TEM como el Procurador General han impugnado ante nos.

Para resolver la controversia ante nos, es menester hacer un resumen del testimonio vertido por la perjudicada en las dos vistas preliminares que se celebraron *a quo*, así como del contenido esencial de la declaración jurada de la testigo Alma Sierra Maldonado.

En esencia, la joven de 18 años del caso de autos, una estudiante universitaria, declaró que el doctor Cañas Rivas llegó a su habitación en el hospital a eso de las 7:30 a 8:00 de la mañana, corrió la cortina que separaba su cama de la de la otra paciente que estaba en el mismo cuarto y procedió a examinarla con su estetoscopio en el pecho y en la espalda. Entonces se le acercó para palparle la cara y la frente debido a que ella padecía de sinusitis. En ese momento la besó en la frente, luego la besó en la mejilla y finalmente le dio un beso prolongado en la boca, un beso que la paciente caracterizó de "asqueroso", porque el médico le metió su lengua en la boca. Cañas Rivas entonces besó sus propios dedos índice y del corazón, puso esos dedos sobre los labios de la paciente, y se marchó de la habitación con una sonrisa. La joven añadió que durante todo el incidente referido ella se había quedado tiesa porque no se imaginaba que su doctor procedería como lo hizo. Declaró también que, luego de marcharse Cañas Rivas, ella se echó a llorar.

Como respuesta a los contrainterrogatorios correspondientes la joven admitió que ella se había atendido antes con Cañas Rivas y se habían despedido en una ocasión con un beso en la mejilla; que Cañas Rivas el día del incidente la había besado más de tres veces porque le había dado besos en ambas mejillas; que el incidente del besuqueo duró como quince (15) minutos; que ella no había objetado ni protestado de modo alguno en ningún momento mientras Cañas Rivas la besaba; que ella había llorado en silencio; que no dijo nada sobre el asunto a una persona que entró en la habitación a entregar las bandejas de comida; que no llamó inmediatamente a alguna enfermera para quejarse del incidente después de éste haber sucedido; y que tampoco se quejó de ello con la compañera de habitación hasta que ésta, por su cuenta, le preguntó si la persona que

había entrado a la habitación antes y había corrido la cortina era su novio o su pretendiente, cuando entonces la joven la increpó por no haberla ayudado.

El testimonio de la otra paciente que estuvo en el cuarto durante el incidente, Alma Sierra Maldonado, vertido en una declaración jurada, es enteramente consistente con el de la joven, descrito antes. En esencia, esta testigo señaló que vio cuando una persona entró a la habitación y corrió la cortina que separaba las dos camas del cuarto; que notó cuando esa persona besaba a la joven en la frente, en la mejilla y en la boca; que el beso prolongado que la persona dio a la joven era como un beso de novela o de novios, razón por la cual no quiso interrumpir el incidente; que luego que la persona se fue, al darse cuenta de que la joven lloraba, le preguntó si la persona era su novio o su pretendiente; que entonces la joven de manera histérica le increpó por no haberla ayudado, explicándole que esa persona era su médico.

Para completar este resumen del testimonio de la joven, debe señalarse que ésta indicó que después de haber increpado a la compañera de habitación por no ayudarla, se fue al baño, vomitó y se lavó la boca. Entonces llamó por teléfono a su madre, quien a su vez llamó a la Policía para querellarse por lo sucedido. También afirmó expresa y reiteradamente que ella no había incitado al doctor para que la besara, que ello ocurrió en contra de su voluntad y que el día de los hechos le habían administrado unos bronquiodilatadores como medicamento.

Para concluir, debe señalarse que el doctor Cañas Rivas era casado al momento del incidente, tenía 52 años de edad y, conforme el testimonio del Dr. Eduardo Ibarra, Director del Hospital, tenía un expediente "totalmente limpio,...moralmente intachable". Igualmente debe señalarse que el propio doctor Cañas Rivas presentó ante el Tribunal de Circuito de Apelaciones una evaluación psiquiátrica que se le había hecho a petición suya en que se concluye que Cañas Rivas no tiene signos de condición o enfermedad mental. También se indica en dicha evaluación que en relación al incidente en cuestión, Cañas Rivas le admitió a su psiquiatra "la indiscreción de su conducta, pero que la actuación de ambos fue voluntaria y espontánea".

III

Reiteradamente hemos resuelto, en el contexto de querellas contra jueces y abogados, que "la **absolución** del querellado en la causa penal no impide que por los mismos hechos se juzgue su conducta a los fines de determinar si incurrió en alguna falta ética". In re Calzada Llanos, 124 D.P.R. 411, 425 (1989); In re Rodríguez Caraballo, 106 D.P.R. 792, 799 (1978); In re De Castro, 100 D.P.R. 184 (1971); In re Abella, 67 D.P.R. 229, 238-239 (1947); In re Tormes, 30 D.P.R. 267 (1922). Véase, además, In re Franco Soto, 115 D.P.R. 740 (1984). Esta conocida norma responde al hecho de que el procedimiento disciplinario no va dirigido a castigar al querellado por la falta cometida, "sino a proteger a la comunidad y a la profesión mediante una investigación de sus condiciones morales para determinar si puede continuar en la práctica [profesional]", In re Liceaga, 82 D.P.R. 252, 255 (1961). Por ello, hemos resuelto antes que en el procedimiento disciplinario **"no es necesario probar los hechos de igual manera como si se tratase de una caso criminal"**. In re Calzada Llanos, supra; In re De Castro, supra.

De igual modo, en procesos administrativos disciplinarios, particularmente en el contexto de funcionarios o empleados públicos sometidos a un procedimiento administrativo para su destitución, hemos resuelto reiteradamente que el hecho de que una persona haya sido juzgada y absuelta en un proceso penal no impide que se formulen y diluciden cargos administrativos en su contra por los mismos hechos que motivaron el caso penal. Ex Policía San Vicente v. Policía de P.R., res. el 12 de noviembre de 1996, 142 D.P.R. ___, 96 JTS 148; Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978); Mundo v. Tribunal Superior, 101 D.P.R. 302 (1973); Vélez Quiñones v. Srio. de Instrucción, 86 D.P.R. 752 (1962); Cruz v. Garrido Morales, 58 D.P.R. 653 (1941). Claramente hemos indicado que "la absolución penal no confiere inmunidad en el campo administrativo". Pagán Hernández v. U.P.R., supra, a la pág. 749. Hemos indicado que la acción administrativa es independiente de la criminal porque tienen propósitos distintos, por lo que una no puede estar supeditada a la otra. Cruz v. Garrido Morales, supra, a la pág. 663. También hemos señalado que se tratan de procedimientos que requieren diferentes grados de prueba. Mundo v. Tribunal Superior, supra, a la pág. 306.

En el caso de autos, el Tribunal de Circuito de Apelaciones descartó la aplicación de las doctrinas referidas antes haciendo hincapié en que aquí no se trataba de una previa **absolución** criminal sino de una previa determinación de no causa probable para arresto. Según el foro apelativo, la importante diferencia probativa entre un procedimiento penal y uno administrativo disciplinario necesariamente significaba que las doctrinas referidas se limitaban sólo al caso de la previa absolución criminal. Sin embargo, ya antes hemos aplicado las doctrinas en cuestión aun en casos en los cuales no hubo una **absolución** en el proceso penal, **sino algo bastante menos que ello**. Así pues, en In re Soto López, 135 D.P.R. 642 (1994), consideramos procedente la aplicación de las referidas doctrinas en el proceso disciplinario contra un abogado a pesar de que hubo determinaciones de no causa probable por los mismos hechos tanto en la vista preliminar inicial como en la vista preliminar en alzada. Enfatizamos, otra vez, que el procedimiento criminal –en este caso la vista preliminar para determinar si existe causa probable– y el procedimiento disciplinario se rigen por criterios distintos, y que éste no está supeditado a aquél. In re Soto López, supra, a la pág. 646. Así mismo, en In re Santiago del Valle, res. el 28 de octubre de 1998, 146 D.P.R.___, 98 TSPR 143, 98 JTS 161, consideramos procedente un procedimiento disciplinario contra un exjuez, a pesar de que la denuncia penal por los mismos hechos había sido archivada por el tribunal de instancia sin celebrarse un juicio.

Igual ha sucedido en relación a procedimientos administrativos contra empleados públicos. En Ex Policía San Vicente v. Policía de P.R., supra, la denuncia penal contra un policía que agredió físicamente a su concubina en varias ocasiones había sido archivada por el tribunal de instancia. Resolvimos que ello de ningún modo impedía que pudiera instarse en su contra un procedimiento administrativo disciplinario. Expresamente señalamos que ni la absolución ni **el "archivo de la denuncia durante la etapa inicial en un proceso criminal"** impedían que se destituyese al empleado público en un proceso administrativo basado en los mismos hechos que motivaron la acción criminal.

En resumen, pues, por razón de los propósitos diferentes que persiguen, la determinación judicial de ausencia de responsabilidad penal no confiere *per se* ninguna inmunidad contra procedimientos disciplinarios profesionales o procedimientos disciplinarios administrativos instados por los mismos hechos que motivaron la acción penal, **sin que importe que la referida determinación judicial haya sido una de archivo de una denuncia criminal, de no causa probable para arrestar o acusar, o de absolución luego de un juicio**. Ello es así no sólo porque todos estos distintos procedimientos aparejan diferentes grados de prueba sino, además, porque son procedimientos de naturaleza disímil, que persiguen objetivos concretos distintos. En particular, con respecto a lo que aquí nos concierne, unos hechos pueden no ser punibles desde la perspectiva penal por la falta, digamos del elemento de *mens rea* y aun así ser sancionables disciplinariamente, por la importancia que tiene para las profesiones el fin de que se evite **aun la apariencia de conducta impropia**. Véase, In re Franco Soto, supra. Una conducta puede no ser ilícita penalmente y a la vez ser contraria a la ética profesional. Véase, In re Liceaga, supra.

IV

A la luz de la normativa reseñada antes, pasemos ahora a examinar los hechos concretos del caso de autos.

El foro apelativo concluyó que a base de la prueba que tuvieron ante sí, los foros de instancia no habían encontrado "que existía ni siquiera el mínimo de evidencia requerida para sostener la alegación de que el [imputado] besó a la paciente perjudicada en contra de su voluntad". Por ello, según dicho foro, como el estándar de prueba para el procedimiento disciplinario (evidencia sustancial) era mayor que el del procedimiento penal de vista para determinar causa probable para arrestar (*scintilla* de evidencia), entonces la misma prueba presentada ante el foro de instancia no era suficiente para sostener el dictamen del TEM. Esta conclusión del foro apelativo, sobre la cual basó su dictamen de que el TEM había errado al no desestimar la querella en contra del doctor Cañas Rivas, no fue correcta. Veamos por qué no lo fue.

Para comenzar, debe notarse que de ordinario la determinación de que no existe causa probable para arrestar a una persona que ha sido denunciada, no se explica en algún escrito o resolución judicial. Sólo se hace constar con una mera marca en el encasillado de la denuncia que lee "No Se Determinó Causa Probable". Contrario a lo que ocurre cuando el magistrado ha examinado bajo juramento algún testigo de los hechos y ha determinado que existe causa probable para arrestar en casos en que no se ha presentado una denuncia, cuando se determina que no hay causa, no se requiere que el magistrado levante un acta para exponer las razones que apoyan su decisión. Regla 6(a) de Procedimiento Criminal de Puerto Rico, 34 L.P.R.A. Ap. III. De ordinario, pues, no se conocen los fundamentos de la decisión judicial de que no existe causa probable para arrestar. Así sucedió en el caso de autos, por lo que la interpretación por el foro apelativo del alcance de los dictámenes de instancia en cuanto al grado de la prueba que estuvo ante ellos, tiene carácter especulativo o conjetural.

Debe notarse que las determinaciones judiciales de no causa en el caso de autos, pudieron haber respondido a diferentes razones que de modo alguno impedían la evaluación que se hizo en el procedimiento ante el TEM. Así pues, el foro de instancia pudo haber estimado sólo que la prueba que tenía ante sí no establecía que Cañas Rivas había **empleado fuerza o violencia** para besar a la joven, que es uno de los elementos del delito que se le imputaba.[1] Es posible,            en            cambio,            que            el

---

[1] Véase, Pueblo v. Villaveitía, 41 D.P.R. 316 (1930), que estableció por primera vez en nuestra jurisdicción que darle un beso a una mujer contra su voluntad constituye un delito de agresión.

foro de instancia hubiese estimado que la prueba que tenía ante sí no establecía que Cañas Rivas había tenido la intención criminal **de causarle daño a la joven**, que es otro de los elementos del delito que se le imputaba.[2] Ninguna de estas dos posibles razones para determinar que no existía causa probable aquí podían impedir que en el foro disciplinario se concluyese que el doctor Cañas Rivas se había valido de la ocasión para besar a su paciente sin que ésta realmente lo hubiese consentido. Es decir, en cuanto a estos dos fundamentos, la ausencia de prueba para fines del procedimiento penal no significaba de modo alguno que no había prueba suficiente en apoyo del dictamen disciplinario. No se trata de que hubiese un *quantum* de prueba diferente entre un procedimiento y el otro, sino de que lo que había que probar era distinto.

Claro está, también es posible que el foro de instancia no le haya dado **ninguna credibilidad** al testimonio de la joven perjudicada ni a la declaración jurada de la testigo. Es posible que el foro de instancia haya estimado que el incidente del besuqueo sencillamente no ocurrió; o que si sucedió fue sólo porque la joven incitó al médico o, al menos, consintió a ello de manera voluntaria y espontánea. Cualquiera de estas apreciaciones de la prueba hubiese justificado la determinación de que no existía causa probable para arrestar por el delito de agresión agravada. Sin embargo, es altamente dudoso que en el caso de autos, el foro de instancia haya hecho alguna de estas apreciaciones de la prueba. Nótese que **nadie refutó o contradijo el testimonio de la joven perjudicada o la declaración de la testigo**. Esta fue la única prueba que consideró el foro de instancia, ya que el doctor Cañas Rivas no presentó prueba exculpatoria. Más aun, no hay nada en la transcripción de la evidencia que siquiera sugiera que el testimonio de la joven fue confuso o vacilante. Por el contrario, aun sus respuestas a los contrainterrogatorios surgen claras y definitivas. En todo momento la joven expresó de modo palmario que ella no objetó a la conducta del médico porque se había quedado "tiesa" ante el sorpresivo e inusitado comportamiento

---

[2] Pero véase, <u>Pueblo v. Díaz</u>, 62 D.P.R. 499 (1943), en que resolvimos que el daño no tiene que ser necesariamente corporal, pudiendo constituirlo cualquier contacto ilegal, realizado sin el

de Cañas Rivas. Debe recordarse aquí que aunque es lícito que un magistrado en el procedimiento de vista preliminar pase juicio sobre la credibilidad de los testigos y descarte cualquier testimonio que no sea susceptible de ser creído, Pueblo v. Andaluz Méndez, res. el 30 de junio de 1997, 143 D.P.R. ___, 97 JTS 107, en esa tarea es menester distinguir el caso del testigo que no le merecería crédito a ningún juzgador razonable, del caso en que juzgadores razonables pueden discrepar en cuanto a dar crédito o no al testigo. Chiesa, Derecho Procesal Penal de Puerto Rico y EE.UU., Ed. Forum, 1995, Vol. III, pág. 56. Es cuestionable, pues, que el foro de instancia haya descartado el testimonio de la perjudicada y la declaración de la testigo por estimar que éstos eran claramente poco confiables o increíbles.

De cualquier manera, y esto es lo medular, las determinaciones del foro de instancia en cuestión pueden haberse fundamentado en razones muy diferentes, que tienen distintas implicaciones con respecto a la cuestión de si la prueba que aquí nos concierne era suficiente o no para sostener el dictamen del TEM. Como **no se conoce** cuál o cuáles de estas diferentes razones motivó la decisión del foro de instancia, no puede afirmarse que su determinación de no causa probable era vinculante en la esfera disciplinaria. Erró el foro apelativo al resolver que la determinación judicial de la inexistencia de causa probable requería desestimar la querella administrativa que por los mismos hechos pesaba contra el doctor Cañas Rivas. No hay forma de saber que la determinación judicial aludida dimanó de una ausencia total de toda prueba pertinente al asunto que se consideró en el procedimiento disciplinario.

V

Para concluir, nos resta por considerar si el TEM actuó de modo arbitrario, ilegal o en forma tan irrazonable que su dictamen en el caso de autos requiera nuestra intervención. Reiteradamente hemos limitado la revisión judicial de decisiones administrativas a que exista tal abuso de discreción. Metropolitana S.E. v. ARPE, 138 D.P.R. 200, 213 (1995); Fuertes v. ARPE, 134 D.P.R. 947 (1993); Facultad C. Soc. Aplicadas, Inc. v. C.E.S.,

---

consentimiento de la víctima, que ofenda su pudor, le produzca

133 D.P.R. 521 (1993); Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692 (1975). Véase, además, D. Fernández, Derecho Administrativo..., 2da. Edición, págs. 539-566 (2001). Ello es particularmente cierto cuando se trata de una entidad como el TEM, sobre la cual recae la obligación de velar porque los profesionales de la salud tengan la capacidad y la aptitud necesaria para ejercer su profesión dentro de parámetros de excelencia, para lo cual el Estado le ha otorgado amplias facultades. Pueblo v. Villafañe, 139 D.P.R. 134 (1995); Asoc. Drs. Med. Cui. Salud v. Morales, 132 D.P.R. 567 (1993).

El informe del Oficial Examinador del TEM no identifica en modo preciso en qué consistió concretamente la conducta no profesional del doctor Cañas Rivas. En dicho informe se detalla la querella que dio lugar al procedimiento disciplinario; se relatan los procedimientos judiciales y administrativos llevados a cabo; se copian extractos medulares de las transcripciones de la prueba de los procedimientos ante el foro de instancia; se reproduce la declaración jurada de la compañera de habitación; se resume el testimonio del testigo de reputación del querellado; se citan algunas decisiones de este Tribunal; se **concluye** sin más que el querellado violó las normas que prohiben la conducta no profesional y se recomienda la revocación de la licencia del querellado. Es de suponer que el Oficial Examinador encontró probada la alegación de la querella presentada en este caso de que el médico "besó en la boca [a la paciente] en contra de su voluntad", en vista de la grave sanción recomendada; pero el informe carece de unas determinaciones de hecho adecuadas. Más aun, carece también de una discusión de qué normas concretas fueron violadas en relación a los hechos que se consideraron probados.

La decisión del propio TEM es aun mucho más escueta. Se limita a una oración, en la cual se señala que se adopta el informe del Oficial Examinador, pero se modifica la sanción recomendada a una suspensión de la licencia del querellado por seis (6) meses, sujeta a que éste se someta a tratamiento psicológico o psiquiátrico. La enorme diferencia entre la sanción recomendada por el Oficial Examinador y la impuesta por el TEM sugiere que

vergüenza, humillación o angustia mental.

éste puede haber tenido dudas sobre si la conducta del médico fue consentida de algún modo o no.

Parte de la dificultad con el dictamen del TEM surge del hecho, también resaltado por el foro apelativo, de que el Oficial Examinador descansó esencialmente en la transcripción de la evidencia de los procedimientos judiciales y en la declaración jurada de la testigo. No vio ni oyó declarar a la perjudicada ni a la testigo presencial de los hechos. No estuvo ciertamente en la mejor posición para aquilatar por su cuenta los hechos pertinentes de este caso. Ya antes nos habíamos enfrentado a una situación similar y resolvimos que un cargo disciplinario[3] sometido a un Comisionado Especial a base de la transcripción de la prueba ofrecida durante el juicio, no lo ponía en condiciones de pasar juicio sobre la credibilidad de los testigos. In re Rodríguez Caraballo, supra, a la pág. 799. En esa ocasión, no hicimos ningún otro pronunciamiento sobre el particular porque los demás cargos en contra de juez querellado fueron suficientes para decretar su separación del puesto judicial.

Hoy, sin embargo, resolvemos la cuestión referida que quedó pendiente en In re Rodríguez Caraballo, supra. Determinamos que en procedimientos disciplinarios en los cuales existan importantes cuestiones de credibilidad, no debe el juzgador de los hechos aceptar que el caso sea sometido a base de una transcripción de la prueba de los testimonios pertinentes. De ordinario, el juzgador de los hechos debe recibir directamente los testimonios referidos para poder aquilatar su valor de manera óptima.[4]

Lo anterior no significa, sin embargo, que en el caso de autos debamos dejar sin efecto el dictamen del TEM. Aquí no hay controversia sobre el hecho de que el doctor Cañas Rivas aprovechó la ocasión de su visita a su joven paciente para besarla en varias ocasiones mientras la examinaba. El propio

---

[3] Curiosamente, ese cargo le imputaba al querellado haber besado a una joven mediante el uso de la fuerza.

[4] Lo anterior no significa que no pueda encontrarse apoyo suficiente para hacer una determinación de hechos a base de una declaración jurada. Todo depende de las circunstancias particulares de cada caso. Así pues, en In re Liceaga, supra, a la pág. 257, encontramos suficiente la declaración jurada del

querellado admitió ante el foro apelativo que ello había sido una "indiscreción". Más aun, de la transcripción de la prueba y de los escritos de los distintos representantes legales del doctor Cañas Rivas en varias etapas de todos los procedimientos habidos en este caso, surge claro que la defensa medular del querellado no es que no haya besado a su joven paciente sino más bien que lo que ocurrió fue un acto consentido entre ellos.

La conducta del querellado, aunque no haya sido expresamente objetada por la joven paciente mientras ocurría, constituye claramente un proceder impropio de este médico. No es consistente con las altas exigencias que se reclaman de todos los profesionales en el mundo contemporáneo. In re Franco Soto, supra, a la pág. 751. Cuando menos, el doctor Cañas Rivas aquí se aprovechó de la confianza que inspira su profesión para darle a su joven paciente, una menor de edad, quien se encontraba bajo medicamentos y en una condición frágil por su enfermedad, un "tratamiento" improcedente, inusitado y poco ético. Como bien se señala en el Code of Medical Ethics de la American Medical Association, (1997), a la pág. 130:

> **Sexual Misconduct in the Practice of Medicine**. Sexual contact that occurs concurrent with the physician-patient relationship constitutes sexual misconduct. Sexual or romantic interactions between physicians and patients detract from the goals of the physician-patient relationship, may exploit the vulnerability of the patient, may obscure the physician's objective judgment concerning the patient's health care, and ultimately may be detrimental to the patient's well-being.
>
> If a physician has reason to believe that non-sexual contact with a patient may be perceived as or may lead to sexual contact, then he or she should avoid the non-sexual contact. At a minimum, a physician's ethical duties include terminating the physician-patient relationship before initiating a dating, romantic, or sexual relationship with a patient.

A la luz de lo anterior, resolvemos que no erró el Tribunal Examinador de Médicos de Puerto Rico al sancionar al doctor Cañas Rivas como lo hizo. No encontramos que su dictamen haya sido arbitrario o tan irrazonable como para que debamos revocarlo. Erró el foro apelativo al así hacerlo.

Se dictará sentencia de conformidad con lo aquí resuelto.

---

propio querellado para sostener una determinación de hecho formulada por el Comisionado Especial.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Tribunal Examinador de
Médicos de Puerto Rico

     Peticionario


       vs.                                   CC-2000-428          Certiorari


Dr. Luis R. Cañas Rivas

     Recurrido




SENTENCIA



San Juan, Puerto Rico, a 23 de abril de 2001.


     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se revoca la sentencia del Tribunal de Circuito de Apelaciones, Circuito Regional V de Ponce-Aibonito, de 27 de marzo de 2000, en el presente caso.

     Se reinstala el dictamen del Tribunal Examinador de Médicos de Puerto Rico.



     Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión.




                   Isabel Llompart Zeno
              Secretaria del Tribunal Supremo