# 2009 DTA 82

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL II**

EX AGTE. ABNER RIVERA GINES
Apelante-Recurrente

v.

POLICIA DE PUERTO RICO
Apelada-Recurrida

Núm. KLRA-2008-01174

San Juan, Puerto Rico, a 26 de mayo de 2009

Panel integrado por su Presidenta, la Juez García García,
la Juez Varona Méndez y el Juez Cabán García

Varona Méndez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Ex Agente Abner Rivera Ginés nos pide que revisemos una resolución en reconsideración dictada por la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.), mediante la cual confirmó la destitución en su puesto en la Policía de Puerto Rico.

La agencia recurrida, Policía de Puerto Rico, compareció a expresarse sobre el recurso presentado, por lo que el caso quedó sometido para adjudicación. Así pues, con el beneficio de la comparecencia de las partes, la transcripción de la prueba oral y el derecho aplicable, resolvemos.

### I

El 17 de enero de 2006, el Superintendente de la Policía de Puerto Rico, le envió una comunicación al recurrente, Sr. Abner Rivera Ginés, mediante la que le notificó su expulsión al cuerpo de la Policía. Dicha comunicación fue precedida por una investigación sobre hechos ocurridos el 18 de marzo de 2004 en el Centro Comercial Plaza Caparra [1] Mall, en virtud de la cual se determinó que las actuaciones del Sr. Rivera Ginés constituían faltas graves número 24 y 27, según tipificadas por el Artículo 14, Sección 14.5 del Reglamento de Personal de la Policía de Puerto Rico que dispone:

"Sección 14.5 – Identificación de Faltas

Se consideran faltas graves las siguientes:

….

24. Apropiarse ilegalmente de bienes pertenecientes a otras personas o aquéllos que le hayan sido confiados en el curso de sus funciones.

…

27. Observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.

…".

El 10 de marzo de 2006, el recurrente presentó una apelación ante la C.I.P.A. En su solicitud alegó que la determinación tomada por el Superintendente de la Policía era irrazonable como cuestión de derecho, por lo que solicitó que se señalara vista para considerar en sus méritos la apelación.

El 3 de julio de 2007, notificada el 23 de abril de 2008, la C.I.P.A. dictó resolución, mediante la cual modificó la medida disciplinaria impuesta por la Policía, a una de suspensión de empleo y sueldo por 150 días.

La Policía de Puerto Rico solicitó reconsideración a la modificación del castigo el 8 de mayo de 2008, que fue señalada para vista. Celebrada la vista el 11 de julio de 2008, la C.I.P.A. dictó resolución en reconsideración el 5 de agosto de 2008, notificada el 21 de agosto siguiente, mediante la cual reconsideró su decisión de modificar la medida disciplinaria y confirmó la destitución del recurrente del cuerpo de la Policía.

En su resolución original de 3 de julio de 2007, la C.I.P.A. hizo las siguientes determinaciones de hechos sobre el incidente que dio lugar al inicio del proceso disciplinario:

"1. El señor Abner Rivera Ginés fungía como agente de la Policía de Puerto Rico.

2. El día 18 de marzo de 2004, el apelante se encontraba en la tienda Comp USA en el centro comercial Plaza de Guaynabo. Mientras estaba en la tienda, un empleado observó cuando rompió la cinta de un programa de computadora e introdujo dos CD del mismo en un bolsillo de la parte trasera de su pantalón. El empleado procedió a informarlo al guardia de seguridad que verifica los boletos de compra cuando los clientes salen de la tienda para comprobar que los artículos correspondan a lo que pagó.

3. El apelante procedió a pagar por otro programa de menor precio. Al tratar de salir de la tienda, el guardia de seguridad le preguntó por lo que tenía en el bolsillo trasero del pantalón que era de la tienda y que no había pagado. Le encontraron en el bolsillo trasero los programas de computadoras valorados en $109.00. En ese momento estaba presente un agente de la Policía Estatal vestido de civil, que procedió a desarmar al apelante en la tienda.

4. Como el apelante es un agente de la Policía, procedieron a llamar a un supervisor para que realizara la investigación del caso. La tienda en todo momento retuvo los dos programas incautados al apelante. Al señor Abner Rivera le radicaron cargos por violación al Artículo 165 del antiguo Código Penal, apropiación ilegal agravada -delito menos grave- y el tribunal le encontró causa probable para juicio bajo la Regla 6 de las de Procedimiento Criminal.

5. Durante la celebración del juicio se suprimió la prueba debido a que no se siguió la cadena de evidencia y el Honorable Juez desestimó el caso por la Regla 234 de Procedimiento Criminal.

6. En las vistas celebradas ante la Comisión, la Policía tampoco presentó evidencia incautada al apelante, ya que la tienda la retuvo en todo momento."

A base de las antes citadas determinaciones de hechos, la C.I.P.A. concluyó que el recurrente se había apropiado ilegalmente de dos programas de computadoras de la tienda Comp USA en el Centro Comercial Plaza de Guaynabo el 18 de marzo de 2004, por lo que había incurrido en la Falta Grave número 25. Asimismo, concluyó que la conducta del recurrente era lesiva e inmoral y en detrimento del cuerpo, por lo que violó la Falta Grave número 27. No obstante, encontró que la Policía había fallado en la investigación del caso al no retener la prueba contra el recurrente, lo que dio lugar a que se desestimara la causa penal en su contra.

En vista de que no se presentó la evidencia tampoco ante la C.I.P.A. -los programas apropiados ilegalmente-, ésta concluyó que, aun cuando existe preponderancia de la evidencia para tomar medida disciplinaria contra el recurrente, la Policía debió actuar con más responsabilidad en la tramitación del caso, tanto en la esfera penal como en la administrativa. Por tal razón, resolvió modificar el castigo de expulsión impuesto al apelante a una suspensión de 5 meses de empleo y sueldo.

Inconforme con dicha determinación, la Policía solicitó reconsideración. En ésta, planteó que las faltas administrativas en que incurrió el recurrente son faltas graves, que atentan contra la moral. Sostuvo que la salvaguarda constitucional del debido proceso de ley se le había garantizado al recurrente y que el Estado había pagado su negligencia al no haberlo podido procesar criminalmente. Asimismo, sostuvo que los artículos robados eran indispensables para poder probar el caso penal, donde el *quántum* de prueba es más estricto que el civil. Sin embargo, siendo este caso uno donde lo requerido para establecer la comisión de las faltas es uno de preponderancia de la prueba, entonces procedía imponerle al recurrente la medida disciplinaria de la expulsión, ya que se había establecido que éste había incurrido en ambas faltas.

Las partes discutieron sus puntos de vista ante la C.I.P.A. La Policía arguyó que el castigo de expulsión es mandatorio, al ser el recurrente un agente del orden público cuyo deber primordial es velar por el cumplimiento de la ley. Expresó, además, que al incurrir en dicha conducta, el recurrente laceró la imagen y la buena reputación del cuerpo que representa.

Por su parte, el recurrente expresó que bajo ninguno de los estándares del peso de prueba vigentes en nuestro ordenamiento, la Policía había logrado demostrar que había observado conducta impropia. Adujo que ello es así, al no haber presentado el Superintendente los programas de computadora que alegadamente fueron hurtados por el recurrente.

Tras celebrar vista en reconsideración, la C.I.P.A. reiteró su conclusión previa, en el sentido de que se había presentado prueba suficiente para demostrar que el apelante se apropió ilegalmente de dos programas de computadoras en la Tienda Comp U.S.A. en el Centro Comercial Plaza de Guaynabo el 18 de marzo de 2004, por lo que violó la Falta Grave Núm. 24. No obstante, sostuvo que aunque no fueron objeto de prueba los artículos apropiados ilegalmente, los testimonios no objetados de los empleados del establecimiento Comp USA son suficientes para concluir que el recurrente incurrió en el hurto que se le imputo. "Este fue sorprendido por el personal de seguridad con los artículos en su persona por lo [sic] cuales no pagó en la caja registradora del local. No existe base en el récord para dudar de la credibilidad de esta declaración".

En virtud de ello, la C.I.P.A. concluyó que "la Falta Grave Núm. 24 quedó demostrada y procedía desde un principio la expulsión del apelante." Por último, citando a *San Vicente Frau v. Policía de PR,* 142 D.P.R. 1 (1996), razonó que el Superintendente puede expulsar a un miembro de la Fuerza por la comisión de faltas graves al Reglamento, por lo que declaró con lugar la moción de reconsideración instada por la Policía de Puerto Rico y confirmó la expulsión del recurrente.

Insatisfecho, el recurrente sostiene ante nos que erró la C.I.P.A. al concluir que existía evidencia sustancial para determinar que el recurrente se había apropiado de unos programas de computadora y al reconsiderar su determinación aun concluyendo que el procedimiento llevado a cabo en el trámite de la evidencia había violado el debido proceso de ley del recurrente.

## II

*La revisión judicial*

Es norma reiterada en nuestro ordenamiento jurídico que las determinaciones de las agencias administrativas merecen deferencia judicial y que sus decisiones se presumen correctas. *Castillo v. Depto. del Trabajo,* 152 D.P.R. 91 (2000); *Costa, Piovanetti v. Caguas Expressway,* 149 D.P.R. 881, (1999). Nuestro derecho administrativo se basa en una actitud de consideración y respeto de parte de los tribunales a las decisiones de las agencias administrativas. De ahí que los procesos administrativos y las determinaciones de hechos de las agencias estén cobijados por una presunción de regularidad y corrección. Por eso, la revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de manera arbitraria, caprichosa o ilegal. *Vélez v. A.R.P.E.,* 167 D.P.R. 684 (2006).

Respecto al alcance de la revisión judicial de decisiones administrativas, el Tribunal Supremo dispuso en el caso *Otero v. Toyota*, 163 D.P.R. 716 (2005), que las decisiones de los organismos administrativos merecen la mayor deferencia judicial por razón del conocimiento especializado y la experiencia en cuanto a los asuntos que les son encomendados. Al revisar una decisión administrativa, el criterio rector será la razonabilidad en la actuación de la agencia. Los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero v. Toyota, supra*

La evidencia sustancial, según ha sido definida, "es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). La parte afectada por una determinación de hecho de una agencia debe, en primer lugar, "demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración". *Ramírez v. Depto. de Salud*, 147 D.P.R. 901, 905 (1999) Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez Rivera v. Depto. de Salud, supra*. Esto persigue evitar que los tribunales sustituyan el criterio de la agencia por el suyo propio.

Se señaló además en el caso de *Otero v. Toyota, supra,* que la referida deferencia solamente cede en las siguientes circunstancias: (1) cuando no esté basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley; y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada.

En cuanto a la apreciación de la prueba, es nuestra obligación respetar la apreciación de la agencia en cuanto a la credibilidad de los testigos. *Hilton Hotels v. Junta de Salario Mínimo, supra*. No debemos perder de vista que la determinación en cuanto al testimonio y la deducción de hechos establecidos en la vista le corresponde al organismo adjudicador, por lo que este tribunal no debe pasar sobre la credibilidad del testigo o repesar la evidencia, sino que se limitará a tomar el expediente en su totalidad, para determinar si contiene evidencia sustancial que sostenga las conclusiones de la agencia. *J.R.T. v. Línea Suprema Inc.*, 89 D.P.R. 840 (1964).

*La Policía de Puerto Rico*

La Policía es un organismo civil de orden público que tiene la obligación de proteger a las personas, la propiedad, mantener el orden, prevenir los delitos y compeler a la observancia de las leyes y reglamentos. Art. 3 de la Ley de la Policía de Puerto Rico, Ley Núm. 26 de 22 de agosto de 1974, según enmendada. Para asegurar el cumplimiento con estos deberes, el legislador delegó en el Superintendente la facultad de determinar por Reglamento "la organización y administración de la Policía, las obligaciones, responsabilidades y conducta de sus miembros y cualquier otro asunto necesario para el funcionamiento del Cuerpo". Art. 7 de la Ley Núm. 26, *supra*.

A tono con lo anterior, el Reglamento de la Policía de Puerto Rico dispone que la Policía tiene las siguientes obligaciones y responsabilidades específicas: proteger la vida y propiedad, impedir el crimen y el desorden; prevenir, descubrir y perseguir el delito; cumplir y velar por el cumplimiento de las leyes, reglamentos y ordenanzas municipales; observar y procurar la protección de los derechos civiles del ciudadano; observar en todo momento una conducta ejemplar; tomar las providencias necesarias para garantizar la protección de la persona detenida; tratar cortésmente al público y prestar la debida ayuda a las personas que la requieran; prestar la debida protección al pueblo reunido legalmente para cualquier fin lícito; obedecer las órdenes legalmente emitidas por sus superiores; ser puntual en sus compromisos oficiales y diligente en el

cumplimiento de su deber, actuando siempre en forma ecuánime, serena y justa; y orientar y aconsejar al público sobre el mejor cumplimiento de la ley, así como en todo lo que concierne a la seguridad pública. Art. 5 del Reglamento de Personal de la Policía, Núm. 4216.

Conforme al Artículo 14.3 del referido reglamento, el Superintendente tomará las medidas correctivas necesarias cuando la conducta de un empleado no se ajuste a las normas establecidas. Entre otras medidas, se podrán utilizar las suspensiones de empleo y sueldo, y las destituciones.

Para facilitar la aplicación del Reglamento Núm. 4216, *supra*, el mismo contiene varias definiciones en su Artículo 4. El inciso (22) de dicho artículo define "faltas graves" como "[a]quellas faltas aplicables a miembros de la Fuerza que como castigo conlleven expulsión permanente de la Policía de Puerto Rico, degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses".

El Superintendente de la Policía es la autoridad facultada por ley para determinar mediante la referida reglamentación la organización y administración de la Policía, las obligaciones, responsabilidades y conducta de sus miembros y cualquier otro asunto necesario para el funcionamiento del cuerpo. Este reglamento en su sección 14.3 (2) (a) dispone que:

"El Superintendente tomará las medidas correctivas apropiadas cuando un miembro de la Policía de Puerto Rico incurra en violación de cualquiera de las faltas clasificadas en graves o leves. El castigo a imponerse por falta grave podrá ser uno de los siguientes: expulsión del cuerpo, degradación o suspensión del empleo y sueldo por un período no mayor de cinco (5) meses, y el castigo a imponerse por falta leve podrá ser uno de los siguientes: suspensión de empleo y sueldo por un período que no exceda de diez (10) días y/o amonestación escrita."

Cabe puntualizar que es norma reiterada que "la conducta de un miembro de la Policía a quien se le imputa la comisión de faltas bajo el Reglamento de Personal no tiene que ser probada más allá de duda razonable", *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85, 95 (1997). El procedimiento criminal posee distinta naturaleza que el procedimiento disciplinario administrativo, por lo cual una absolución en la esfera penal no libera de responsabilidad en el campo administrativo. *Reyes Salcedo v. Policía, supra; Pagán Hernández v. U.P.R.,* 107 D.P.R. 720 (1978); *Mundo v. Tribunal Superior,* 101 D.P.R. 302 (1971). Por ello, nuestro Tribunal Supremo ha establecido claramente que el procedimiento criminal y el procedimiento disciplinario administrativo son independientes el uno del otro, por lo que la absolución en un procedimiento criminal no confiere inmunidad en relación con un procedimiento disciplinario administrativo por los mismos hechos. *Trib. Exam. Méd. v. Cañas Rivas,* 154 D.P.R. 29 (2001); *Pagán Hernández v. U.P.R., supra.* Esto es así, entre otras razones, porque los referidos procedimientos conllevan, cada uno, un grado *(quántum)* de prueba distinto. *Trib. Exam. Méd. v. Cañas Rivas, supra; Reyes Salcedo v. Policía de P.R., supra.*

En resumen, el Tribunal Supremo ha expresado que, por razón de los propósitos diferentes que persiguen, la determinación judicial de ausencia de responsabilidad penal no confiere *per se* inmunidad alguna contra procedimientos disciplinarios profesionales o procedimientos disciplinarios administrativos instados por los mismos hechos que motivaron la acción penal. Esto, sin importar que la referida determinación judicial haya sido una de archivo de una denuncia criminal, de no causa probable para arrestar o acusar, o de absolución luego de un juicio. Entendió que ello era así, no sólo porque todos estos distintos procedimientos aparejaban diferentes grados de prueba, sino, además, porque eran procedimientos de naturaleza disímil, que perseguían objetivos concretos distintos. *Trib. Exam. Méd. v. Cañas Rivas, supra.*

*Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.)*

De otra parte, la C.I.P.A. fue creada mediante la Ley Núm. 32 de 22 de mayo de 1972, según enmendada

(Ley Núm. 32), 1 L.P.R.A. §§ 171 *et seq.*, con el propósito de entender en casos en que se le impute mal uso o abuso de autoridad a cualquier agente del orden público, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva estatal o municipal autorizado para efectuar arrestos. 1 L.P.R.A. § 172.

La C.I.P.A. también está autorizada para actuar como cuerpo apelativo con jurisdicción exclusiva para resolver apelaciones interpuestas por los funcionarios cubiertos por dicha ley. 1 L.P.R.A. § 172(2). Estos funcionarios podrán apelar ante la C.I.P.A. cualquier medida disciplinaria impuesta por el jefe o director de la agencia o dependencia en relación con actuaciones que envuelvan mal uso o abuso de autoridad, o con faltas leves o faltas graves, en el caso de miembros de la Policía Estatal o Municipal o de otras agencias que tengan reglamentación similar. *Íd.; Ramírez v. Policía de Puerto Rico,* 158 D.P.R. 320 (2002). La C.I.P.A. tiene la autoridad expresa en ley para confirmar, revocar o modificar la determinación apelada, o inclusive para imponer cualquier sanción que el organismo facultado para sancionar hubiese podido imponer en primera instancia.

## III

El recurrente arguye que la C.I.P.A. tuvo ante sí sólo prueba que establece que el recurrente fue detenido a la salida del establecimiento comercial y que posteriormente se encontraron los CD que éste alegadamente se había apropiado encima de una mesa del lugar al cual fue llevado posterior a su detención. Expresa que nadie observó que los CD estuvieran en los bolsillos de su pantalón y mucho menos que hubiesen sido ocupados en su persona. Por tanto, sostiene que la evidencia desfilada es insuficiente para establecer la comisión de las faltas.

Asimismo, arguye que es de aplicación la doctrina de cosa juzgada al procedimiento administrativo, al haberse ya adjudicado en un procedimiento anterior y quedar relevado de responsabilidad penal. Invoca su derecho constitucional a un debido proceso de ley y aduce que al no haberse encontrado causa probable para someterle el caso penalmente al recurrente por insuficiencia de prueba, no puede justificarse que la misma prueba sea suficiente en el presente caso para sostener la expulsión permanente del recurrente de su empleo como agente de la Policía de Puerto Rico, privándolo de su interés propietario sobre dicho empleo.

Por su parte, la Policía arguye que el *quántum* de prueba en las acciones administrativas no es más allá de la duda razonable. Aduce la Policía, además, que el hecho de que la acción criminal no hubiese concluido con la convicción del recurrente, no es base legal válida para revocar la determinación del Superintendente de la Policía, pues el Estado tiene un interés legítimo en que los miembros del Cuerpo de la Policía de Puerto Rico exhiban una conducta ejemplar y cumplan con todos los deberes y obligaciones que establece la Ley y el Reglamento de la Policía de Puerto Rico.

Este Tribunal ha revisado cuidadosamente la prueba testifical desfilada en la vista celebrada ante la C.I.P.A. El principal testigo, Iván Padín Bonilla, testificó que el 18 de marzo de 2004 se encontraba vestido de civil, porque era su día libre, aunque estaba realizando algunas gestiones de su trabajo, como "Gerente de Pérdidas" o "Lost Prevention Manager" de la tienda Comp USA. Otro empleado le avisó que había una persona que estaba abriendo una mercancía. [2] Observó cuando el recurrente tenía en sus manos, debajo de un *"shopper"*, un programa de computadoras para grabar música. [3] Vio cuando sacó los CD y se los puso en el bolsillo izquierdo en la parte de atrás. [4] El Sr. Padín continuó explicando que "[é]l miró hacia los lados, pero él estaba buscando a empleados de uniformes. Yo fui sin uniforme ese día porque no esperaba que yo estuviera allí." [5]

Luego de observar que el recurrente tenía la mercancía en el bolsillo izquierdo, el Sr. Padín vio que el recurrente deja el paquete vacío en la góndola, donde está, y coge otro. Ese otro disco fue el que procedió a pagar. Entonces, el recurrente pasó por la caja registradora y pagó otro *software* de menor precio. [6] Mientras tanto, el recurrente tenía "lo otro" en el bolsillo izquierdo en la parte de atrás. Luego que pagó, el guardia de seguridad le pidió que entregara el recibo para ver si él había comprado la mercancía que tenía en el bolsillo. Al salir de la puerta, "le dijimos por favor, este…, la mercancía que usted tiene en el bolsillo no ha sido pagada". [7] Según el Sr. Padín, en ese momento, el recurrente trata de salir de la tienda y a pedir que lo dejen salir, hasta

que se percataron de que estaba armado. [8]

Por su parte, el Agente Fermín González testificó que fue al lugar de los hechos, Comp USA en Plaza Caparra, porque habían llamado que tenían un detenido por apropiación ilegal. [9] Llegó inmediatamente porque estaba cerca y allí se entrevistó con el Sr. Padín, quien le indicó que había detenido al recurrente porque lo sorprendió sacando la mercancía de la tienda sin pagar. Era un programa de computadora, un disco. Allí le leyó las advertencias al recurrente y le ocupó el arma de reglamento. [10]

El Agente González testificó que el recurrente le había dicho, a preguntas suyas, que había cometido una estupidez "que él no sabe qué le dio con echarse eso en el bolsillo". [11] En el contrainterrogatorio, fue confrontado por una declaración jurada prestada por el testigo González el 20 de mayo de 2004, quien admitió que no había hecho constar esta admisión en dicha declaración jurada. [12] Además, declaró que no se había ocupado mercancía. [13]

Con las declaraciones de ambos testigos, la C.I.P.A. concluyó que el recurrente había incurrido en conducta constitutiva de las faltas graves imputadas. El recurrente sostiene que al no haberse presentado como prueba los programas de computadoras, se le ha infringido su derecho a un debido proceso de ley. Veamos.

El planteamiento central es que la prueba existente y desfilada en el procedimiento disciplinario es insuficiente. Sus argumentos no nos convencen.

En el caso ante nuestra consideración, no estamos ante una acusación criminal, sino ante un procedimiento administrativo disciplinario. Aun tratándose de un procedimiento disciplinario, éste no tiene la formalidad ni la rigidez de un juicio de carácter criminal ante el foro judicial. El *quántum* de prueba es más liviano que el aplicable a un caso criminal, pues solamente requiere que los hechos queden probados por preponderancia de la prueba.

La jurisprudencia ha reconocido unos requisitos para cumplir con el debido proceso de ley procesal cuando el Estado lleva a cabo un proceso adjudicativo. Estos son: la notificación adecuada del proceso; proceso ante un funcionario imparcial; oportunidad de ser oído; derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; tener asistencia de abogado, y que la decisión se base en el récord. *Rafael Rosario & Assoc. v. Depto. Familia*, 157 D.P.R. 306, 330 (2002).

En la vista celebrada ante la C.I.P.A., al recurrente se le concedió amplia oportunidad para contrainterrogar a los testigos. Culminada la presentación de la prueba por la Policía, ambas partes expresaron dar el caso por sometido para adjudicación.

Luego de analizar la prueba desfilada, así como los documentos presentados junto con los alegatos, vemos que la decisión de la C.I.P.A. no fue una irrazonable, arbitraria, ilegal o caprichosa. La misma está basada en evidencia sustancial que consta de las declaraciones de los testigos. Como ya hemos expresado, el procedimiento ante la agencia no requiere que se demuestre más allá de duda razonable que el recurrente incurrió en la apropiación ilegal por cuyo acto fue acusado criminalmente, ni dependía de que los objetos apropiados ilegalmente fueran presentados en evidencia. El recurrente fue intervenido en la tienda Comp USA. No hay duda en cuanto a su identificación y hay prueba que establece el acto constitutivo de la Falta Grave número 24.

La norma que aplica a los procedimientos criminales, en las que la culpabilidad tiene que probarse más allá de duda razonable, no es de aplicación para las acciones administrativas. *Pagán Hernández v. U.P.R.,* 107 D.P. R. 720, 749 (1978). Además, existen diferencias entre los procedimientos criminales y los procedimientos administrativos de orden civil que incluso impactan la forma de medir la causa probable. *E.L.A. v. Coca Cola*

*Bott. Co.,* 115 D.P.R. 197, 213 (1984). Más aún, se trata de procedimientos independientes por lo cual la absolución en un proceso criminal no confiere inmunidad sobre un proceso disciplinario administrativo relacionado a los mismos hechos. *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85, 97 (1997).

En cuanto a la aplicabilidad de la doctrina de cosa juzgada a procedimientos administrativos, se ha reconocido que en este ámbito su aplicación tiene tres vertientes, a saber: unos hechos ante una agencia administrativa que surgen de nuevo en un caso posterior ante la misma agencia (intragencial); los mismos hechos ante dos agencias adjudicativas (interagencial) y los mismos hechos ante una agencia adjudicativa y un *caso civil* ante un tribunal. *Acevedo v. Western Digital,* 140 D.P.R. 452 (1996); *Rodríguez Oyola v. Machado Díaz,* 136 D.P.R. 250 (1994); *Pagán Hernández v. U.P.R.,* 107 D.P.R. 720.

Como vimos, el recurrente se enfrentó previamente a un procedimiento criminal por apropiación ilegal, bajo el Art. 165 del Código Penal de 1974. El caso fue desestimado, en virtud de la Regla 234 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234, tras haberse suprimido la prueba por no respetarse la cadena de evidencia. Este desenlace no tuvo el efecto de concederle inmunidad al recurrente por dicha conducta, contra quien se inició un procedimiento administrativo por los mismos hechos, pero no para responder criminalmente por dichos actos, sino para la imposición de medidas disciplinarias.

A la luz de lo anterior, y dada la naturaleza de los procesos y sus propósitos, y las pautas sobre la doctrina de cosa juzgada en el ámbito administrativo, resolvemos que en este caso *no* es de aplicación la doctrina de cosa juzgada.

El cargo que desempeñaba el recurrente es uno de alto interés público, a través del cual debe impartir orden y seguridad. La evidencia presentada es sustancial, por lo que procede *confirmar* la Resolución recurrida. Como mencionamos anteriormente, se presume correcta la determinación de una agencia basada en evidencia sustancial, y ante el nivel de especialización de ésta y la ausencia de abuso de discreción, decisión ilegal o irrazonable, procede la confirmación.

Por los fundamentos discutidos, se confirma la resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

## ESCOLIOS 2009 DTA 82

**1.** En algunas partes de la transcripción y de los documentos, se refieren a dicho centro comercial como Plaza Guaynabo.

**2.** Transcripción de la Prueba Oral (T.P.O.), pág. 6.

**3.** T.P.O. pág. 8.

**4.** T.P.O. pág. 9.

**5.** T.P.O. pág. 9.

**6.** T.P.O. págs. 11-12.

**7.** T.P.O. pág. 12.

**8.** T.P.O. págs. 13-14.

**9.** T.P.O. pág. 107.

**10.** T.P.O. págs. 108-109.

**11.** T.P.O. pág. 112.

**12.** T.P.O. págs. 118-119.

**13.** T.P.O. pág. 120.

# 2009 DTA 83

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**