ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Parte Recurrida<br><br>v.<br><br>UROYOÁN WALKER RAMOS<br><br>Parte Recurrente | KLRA202500146 | Recurso de Revisión Administrativa procedente de San Juan<br><br>Caso Núm.:<br>OEG Núm.: 17-05<br><br>Sobre:<br>Violación a los Incisos 4.1(b), (r) y (s) del Artículo 4.2 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, Según Enmendada |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece el señor Uroyoán Walker Ramos (Sr. Walker Ramos o recurrente) y solicita que revisemos una *Resolución* emitida por la Oficina de Ética Gubernamental (OEG o recurrida) el 13 de febrero de 2025, notificada ese mismo día. Mediante el referido dictamen, la OEG le impuso al Sr. Walker Ramos una multa administrativa por infracción a los incisos (b), (r) y (s) del Art. 4.2 de la Ley Orgánica de Ética Gubernamental de Puerto Rico, *infra*, (Ley de Ética Gubernamental).

Por los fundamentos expuestos a continuación, *se confirma* la *Resolución* recurrida.

**I.**

El 29 de septiembre de 2016, la OEG presentó una *Querella* sobre violación a los incisos (b), (r) y (s) del ART. 4.2 de la Ley de

Ética Gubernamental de Puerto Rico de 2011, Ley Núm. 1-2012, según enmendada, en contra del Sr. Walker Ramos. En la referida querella, se le imputó que mientras fungía como presidente de la Universidad de Puerto Rico (UPR) utilizó las facultades y deberes de su cargo para conceder al Sr. Carlos Pagán Cuevas (Sr. Pagán Cuevas) y a la Sra. Mónica Sánchez Sepúlveda (Sra. Sánchez Sepúlveda) el beneficio de la Beca Presidencial. Los cuales, no cumplían con los requisitos para ser escogidos y que, además, el Comité Institucional de Beca Presidencial (Comité) había determinado no recomendarlos para ser beneficiarios de tal subvención.[1]

Entre las alegaciones de la *Querella* la OEG específico que, la Sra. Sepúlveda incumplió con varios de los requisitos establecidos en la Certificación 72 de las *Normas Complementarias para la Implantación de la Política de Concesión de Becas Presidenciales para Estudios Doctorales y Postdoctorales de la Universidad de Puerto Rico* (Normas Complementarias). Entre ellos: el requisito de proseguir los estudios en un área que fuera prioridad para la UPR; tener el compromiso de una plaza en la UPR luego de culminar los estudios doctorales; ser personal docente de la UPR y someter la totalidad de los documentos para la solicitud de beca.

No obstante, al incumplimiento de la Sra. Sánchez Sepúlveda, el recurrente determinó conceder la beca por la cantidad de $23,200.00, a pesar de que, el Comité no recomendó otorgarle dicho beneficio.

Por su parte, el Sr. Pagán Cuevas incumplió con el requisito de proseguir los estudios en un área de prioridad para la UPR, y con tener una plaza que representara el compromiso institucional con el reclutamiento del becario. Además, tampoco entregó la totalidad de

---

[1] Apéndice 1 del Recurso de Revisión Judicial, págs. 1-8.

los documentos requeridos para la solicitud de la beca dentro del término establecido. Sin embargo, el recurrente le otorgó al Sr. Pagán Cuevas la cantidad $40,000.00.

Finalmente, en la *Querella* se adujo que, el recurrente otorgó ambas becas, sin que los solicitantes cumplieran todos los requisitos, y tampoco acreditó las razones para otorgarlas como casos extraordinarios, según dispone la Certificación 72.

En consecuencia, la OEG solicitó que, se le impusiera al recurrente una multa por cada infracción a Ley de Ética Gubernamental. Además, una sanción civil equivalente a tres veces el valor del beneficio económico recibido, si alguno. Mas otras, medidas administrativas.

El 21 de diciembre de 2016, luego de haber solicitado y obtenido una prórroga, el recurrente presentó su *Contestación a la Querella*, en la cual negó la mayoría de las alegaciones y, además, levantó como defensa afirmativa que "[l]os hechos de la presente querella de ninguna forma señalan hechos alusivos a ventajas indebidas, corrupción, beneficios personales ni abuso de poder, según ello es requerido (...)" También, manifestó que todas sus actuaciones se hicieron dentro del marco de la ley.[2]

El 6 de febrero de 2017, Sr. Walker Ramos presentó una *Moción de Desestimación*, la cual fue declara *No Ha Lugar* mediante *Orden*, el 21 de febrero de 2017. Consecuentemente, solicitó *Reconsideración*, la cual fue declarada *No Ha Lugar*.

Luego varios asuntos procesales, el 28 de abril de 2017, el procedimiento administrativo fue paralizado tras una *Resolución* emitida por un panel hermano de este Tribunal.[3] Dado a que, paralelamente había un caso criminal activo en contra del

---

[2] Apéndice 2 del Recurso de Revisión Judicial, págs. 9-14.

[3] KLRA201700233, *OEG v. Uruyoán Walker Ramos*.

recurrente. Luego de culminado dicho caso criminal, el Sr. Walker Ramos presentó una segunda solicitud de *Desestimación* ante la ORG. En síntesis, señaló que se debía culminar el procedimiento administrativo, pues, fue absuelto en el proceso criminal. Dicha solicitud, fue declarada *No Ha Lugar*.

El 13 de mayo de 2022, el recurrente incoó ante la OEG, una *Moción Solicitando Desestimación de la Querella por la misma Violar la Prohibición Constitucional contra la Doble Exposición contenida en la Constitución de Puerto Rico y la de los Estados Unidos de América.*[4] El 9 de junio de 2022, la misma fue declarada *No Ha Lugar* por la OEG.

Inconforme, el recurrente nuevamente acudió ante este foro revisor en el caso *OEG v. Uruyoán Walker Ramos*, KLRA202200347. No obstante, el presente foro desestimó el recurso por falta de jurisdicción, ante su presentación prematura.[5] Insatisfecho, recurrió ante Tribunal Supremo de Puerto Rico. Nuestro más Alto Foro denegó la *Petición de Certiorari.*[6]

El 20 de marzo de 2023, el recurrente presentó ante la OEG una *Moción de Sentencia Sumaria.* En síntesis, alegó que la Certificación 72 y las *Normas Complementarias* le conceden como presidente de la UPR, la discreción de otorgar las Becas Presidenciales, luego de evaluar la recomendación del Comité, los rectores y otra información pertinente. Añadió que, lo anterior es siempre y cuando, se trate de puertorriqueños que fueran admitidos a cursar estudios fuera de Puerto Rico en programas de alto prestigio y que en el criterio del presidente los programas académicos en cuestión atendieran las necesidades del país o de la universidad, independientemente de que el área de estudios o no

---

[4] Apéndice 6 del Recurso de Revisión Administrativa, págs. 47-72.
[5] Véase, Resolución del KLRA202200347.
[6] Apéndices 11, 12, 13, 14 del Recurso de Revisión Administrativa, págs. 123-126.

haya el compromiso para la eventual concesión de una plaza docente.

De igual forma, el recurrente señaló que, la Sra. Sánchez Sepúlveda, fue admitida a cursar un doctorado en la Universidad Politécnica de Cataluña, en el área de urbanismo. Área que fortalece el recién programa creado de maestría y doctorado en estudios urbanos.

Por tanto, alegó que no incumplió con el reglamento de la universidad o la política pública para la concesión de beca. Si no, que utilizó su criterio como presidente para otorgar tales beneficios a los becarios.[7]

En respuesta, el 9 de mayo de 2023, la OEG presentó su *Oposición a Moción de Resolución Sumaria a Favor del Querellado y Solicitud de Resolución Sumaria a favor de la parte Querellante.* En esencia, la OEG alegó que ni la Certificación 72 y tampoco las *Normas Complementarias* conceden total discreción al recurrente para conceder las Becas Presidenciales. Ya que, la discreción que establece ambos preceptos estaba condicionada a que éste acreditara las razones para determinar si una solicitud se trataba de un caso extraordinario y, por ende, no tenía que cumplir con los requisitos de la Beca Presidencial.[8]

Por su parte, el recurrente en la *Replica "Oposición a Moción de Resolución Sumaria a Favor del Querellado y Solicitud de Resolución Sumaria a favor de la parte Querellante"*, sostuvo que, en la Certificación 72 y las *Normas Complementarias*, no existía definición alguna sobre el particular ni criterio alguno que guiara el ejercicio de su discreción. Además, afirmó que entendió que la acreditación como caso extraordinario tendría que surgir de los documentos, las recomendaciones que se le proveyeran y que no

---

[7] Apéndice 15 del Recurso de Revisión Administrativa, págs. 136-158.
[8] Apéndice 16 del Recurso de Revisión Administrativa, págs. 704-761.

tenia que ser éste quien acreditara las razones para la concesión de la beca.[9]

El 11 de agosto de 2023, la OEG presentó la *Duplica a Replica "Oposición a Moción de Resolución Sumaria a Favor del Querellado y Solicitud de Resolución Sumaria a favor de la parte Querellante"*. Mediante la cual, afirmó que el presidente debió acreditar las razones por las cuales concedió las Becas Presidenciales. Dado a que, la discreción no es absoluta y debió ejercer la mayor diligencia y cuidado al establecer las razones para otorgar dicho beneficio.[10]

Finalmente, el 13 de febrero de 2025, la OEG emitió *Resolución*.[11] Mediante la cual, luego de acoger el informe del Oficial Examinador, determinó que el recurrente violó los incisos (b), (r) y (s) del Art. 4.2 de la Ley Ética Gubernamental, *supra*. En consecuencia, lo condenó al pago de $2,000 por cada inciso.[12]

Inconforme con tal determinación, el 13 de marzo de 2025, el recurrente acudió ante nos mediante el presente *Recurso de Revisión Judicial* y le imputó a la OEG la comisión de los siguientes errores:

> Erró la Oficina de Ética Gubernamental al concluir que la parte recurrente cometió una infracción al inciso (b) de Art. 4.2 de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*. Lo anterior, toda vez que el beneficio obtenido por la Sra. Mónica Sánchez Sepúlveda fue concedido conforme a derecho y en virtud de la normativa institucional aplicable. Por lo que existe ausencia total de prueba clara, robusta y convincente que justifique la determinación recurrida.
>
> Erró la Oficina de Ética Gubernamental al concluir que la parte recurrente cometió una infracción al inciso (r) de Art. 4.2 de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*. Lo anterior, toda vez que el expediente administrativo está huérfano de prueba clara, robusta y convincente demuestre que el querellado incumplió algún deber impuesto producto del cual se ocasionara una pérdida de fondos públicos.
>
> Erró la Oficina de Ética Gubernamental al concluir que la parte recurrente cometió una infracción al inciso (s) de Art. 4.2 de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*. Lo anterior, toda

---

[9] Apéndice 17 del Recurso de Revisión Administrativa, págs. 2129-2136.
[10] Apéndice 18 del Recurso de Revisión Administrativa, págs. 2422-2429.
[11] Notificada el 13 de febrero de 2025.
[12] Apéndice 20 del Recurso de Revisión Administrativa, págs. 2431-2432.

vez que dicha determinación está basada en insinuaciones, inferencias y convincentes que demuestre que el querellado incumplió algún deber impuesto producto del cual se ocasionara una pérdida de fondos públicos.

Erró la Oficina de Ética Gubernamental al concluir que la parte recurrente cometió una infracción al inciso (s) de Art. 4.2 de la *Ley Orgánica de la Oficina de Ética Gubernamental [sic]* cuando dicho procedimiento administrativo por su propia naturaleza, violenta la protección constitucional contra la doble exposición por constituir un segundo castigo por los mismos delitos u ofensas por los cuales el Sr. Uroyoán Walker Ramos fue absuelto en un procedimiento penal previo.

El 14 de abril de 2025, la OEG, presentó su *Alegato en Oposición al Recurso de Revisión Judicial.* Mediante el cual, sostuvo que la acción del recurrente de conceder las Becas Presidenciales a candidatos que no cumplían con los requisitos ocasionó la pérdida de fondos públicos. Además, provocó que, la integridad de la universidad se viera empeñada ante el ojo público. Por último, la OEG afirmó que logró demostrar mediante prueba clara, robusta y convincente que el recurrente infringió los incisos (b), (r) y (s). del Art. 4.2 de la Ley de Ética Gubernamental, *supra.*

## II.

## A.

### Revisión Judicial de las Determinaciones Administrativas

Es norma conocida que las determinaciones emitidas por las agencias administrativas están sujetas a un proceso de revisión judicial ante el Tribunal de Apelaciones. *OEG v. Martínez Giraud,* 210 DPR, 79, 88 (2022). Véase, además, Art. 4.006(c) de la Ley Núm. 201-2003 Ley de la Judicatura, 4 LPRA sec. 24y. Al respecto, la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), autoriza expresamente la revisión de las decisiones, órdenes y resoluciones finales de estos organismos. Sec. 4.6 de la LPAU, 3 LPRA sec. 9676.

El objetivo de la revisión judicial es, esencialmente, asegurar que los organismos administrativos actúen conforme a las facultades que la ley les confiere. *Pérez López v. Depto. Corrección,* 208 DPR 656,672 (2022). Por ello, los tribunales revisores debemos conceder deferencia a las decisiones de las agencias administrativas, pues estas gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección. *Capo Cruz v. Junta de Planificación,* 204 DPR 581, 591 (2020). Consecuentemente, la parte que impugne judicialmente las determinaciones de hechos de una agencia administrativa tendrá el peso de la prueba para demostrar que estas no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. *González Segarra v. CFSE,* 188 DPR 252, 276-278 (2013).

Así, el criterio rector al momento de pasar juicio sobre la decisión de un foro administrativo es la razonabilidad de la actuación de la agencia. Así pues, la revisión judicial estará limitada a evaluar si la agencia actuó de manera arbitraria, ilegal o irrazonable, de manera tal que sus acciones constituyeron un abuso de discreción. *OEG v. Martínez Giraud, supra,* pág. 89. De esta forma, el alcance del proceso de revisión se delimita a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo; y (3) las conclusiones de derecho fueron las correctas. Hasta tanto no se demuestre mediante evidencia suficiente que la presunción de legalidad ha sido superada o invalidada, el respeto hacia la resolución administrativa debe sostenerse. Íd.

De igual forma, la Sec. 4.5 de la LPAU, 3 LPRA sec. 9675, establece que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en

evidencia sustancial que obra en el expediente administrativo". Este criterio de evidencia sustancial lo que busca es "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor". *OEG v. Martínez Giraud, supra,* pág. 90. La evidencia sustancial ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capo Cruz v. Junta de Planificación, supra,* pág. 591 (2020).

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotar la presunción que estas poseen. *Transp. Sonell v. Jta. Subastas ACT,* 2024 TSPR 82, 214 DPR ____ (2024); *García Reyes v. Cruz Auto Corp., supra,* pág. 893; *Pacheco v. Estancias,* 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

Empero, debemos puntualizar que los tribunales estamos llamados a ejercer un juicio independiente al evaluar las conclusiones de derecho y las interpretaciones que realizan las agencias sobre la ley que le corresponde administrar. En ese sentido, nuestro más Alto Foro pautó que no debemos guiarnos por una deferencia automática sobre las interpretaciones de las agencias administrativas. Ello debido a que es deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025).

Así pues, esta acepción no podrá estar sostenida por un ligero destello de evidencia o por simples inferencias; por lo que el criterio rector en estos casos siempre estará guiado por la razonabilidad de

la determinación administrativa luego de considerar el expediente administrativo en su totalidad. Por su parte, las determinaciones de derecho serán revisables en todos sus aspectos. Si bien la doctrina opera dentro de un marco de deferencia, en particular, cuando se trata de aquellas leyes y reglamentos que le corresponde a la agencia poner en vigor, esta cede si la agencia (1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016). Por tanto, el criterio administrativo no podrá prevalecer cuando la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrarios al propósito para el cual se aprobó la legislación y la política pública que promueve. En ese sentido, la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia. *OEG v. Martínez Giraud, supra,* pág. 90. Por el contrario, el abuso de discreción se manifiesta cuando el juzgador (1) no toma en cuenta e ignora, sin fundamento, un hecho material; (2) le concede gran peso y valor, sin fundamento, a un hecho irrelevante e inmaterial; y (3) cuando, no obstante considerar y tomar en cuenta los hechos materiales, los sopesa y calibra livianamente. *Pueblo v. Ortega Santiago*, 125 DPR 203, 211-12 (1990).

**B.**

**Ley de Ética Gubernamental**

La Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada, 3 LPRA sec. 1854 *et seq.*, es el estatuto regente de la conducta de los servidores y exservidores públicos de la Rama Ejecutiva. Esta legislación va dirigida a establecer un servicio público íntegro, con valores, que mantenga la confianza en sus instituciones y asegure la

transparencia en las funciones oficiales. Tiene como misión, entre otras, educar al servidor público para que, en el desempeño de sus funciones, exhiba los valores de bondad, confiabilidad, justicia, responsabilidad, respeto y civismo que rigen la administración pública. Art. 2.1 de la Ley de Ética Gubernamental, 3 LPRA sec. 1855. Así, el objetivo principal de esta legislación es renovar y reafirmar la función preventiva y fiscalizadora que realiza la OEG.[13]

Por otro lado, para reafirmar el carácter preventivo y correctivo que tiene esta ley, se le delegó a la OEG la facultad de imponer sanciones a los infractores de sus disposiciones. Respecto a ello, el Art. 4.7 dispone que: toda persona que viole las disposiciones de la Ley de Ética Gubernamental y todo reglamento u orden promulgado por virtud de la referida ley será castigada con una multa administrativa que no excederá de $20, 000 por cada violación. 3 LPRA sec. 1857(f). De igual forma, provee para que la violación de cualquiera de las disposiciones de ese capítulo pueda ser castigada con la suspensión sumaria de empleo, suspensión de empleo y sueldo o con la destitución o despido. *OEG v. Martínez Giraud*, supra, pág.92.

En lo pertinente, el Art. 4.2 de la Ley de Ética Gubernamental, *supra*, establece una serie de prohibiciones éticas de carácter general. *OEG v. Martínez Giraud*, supra, pág.92. De manera textual, el inciso (b) estatuye que "[u]n servidor público no puede utilizar los deberes y las facultades de su cargo ni la propiedad o los fondos públicos para obtener, directa o indirectamente, para él o para una persona privada o negocio, cualquier beneficio que no esté permitido por ley". 3 LPRA sec. 1857a(b).

A su vez, el inciso (c) dispone que, "[u]n servidor público no puede aceptar o solicitar de una persona privada o negocio, directa

---

[13] Véase Exposición de Motivos de la Ley de Ética Gubernamental, 2012 (Parte 1) Leyes de Puerto Rico 18.

o indirectamente, un beneficio como pago por realizar, acelerar, dilatar o dejar de hacer los deberes y las responsabilidades de su empleo". 3 LPRA sec. 1857a(c). Además, el inciso (s) expresa que "[u]n servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental". 3 LPRA sec. 1857a(s). Es decir, penaliza la acción que crea una percepción o apariencia de conducta impropia y deshonestidad en las funciones gubernamentales. *OEG v. Martínez Giraud, supra*, pág.92.

Por otra parte, en aras de fiscalizar la conducta de los servidores públicos y penalizar a todos los que transgredan normas éticas que envuelvan los valores en el servicio público, la OEG, al igual que otras agencias administrativas, lleva a cabo funciones adjudicativas consistentes en decidir casos y controversias aplicando a los hechos la normativa legal pertinente. *OEG v. Martínez Giraud, supra,* págs. 92-93. Ante ello, se ha establecido que las violaciones a dichas disposiciones requieren que la prueba sea aquilatada a la luz del estándar de prueba clara, robusta y convincente. *OEG v. Martínez Giraud, supra,* pág.93.

### C.

**Ley, Reglamento y Normativa Aplicable para la concesión de Becas Presidenciales de la Universidad de Puerto Rico**

La Universidad de Puerto Rico (UPR) es una corporación pública, de génesis legislativa, encargada de la educación superior en Puerto Rico. Art. 1 de la Ley de la Universidad de Puerto Rico, 18 LPRA sec. 601. Véase, además, *UPR v. Asoc. Pur. Profs. Universitarios,* 136 DPR 335, 399 (1994). La Junta de Gobierno (Junta) es quien tiene la facultad de formular las directrices que rigen la orientación y desarrollo de la UPR. Además, examina y aprueba las propuestas legislativas, administrativa y supervisa el buen funcionamiento de la institución. También, entre las funciones

de Junta está: aprobar o enmendar los reglamentos de la UPR; nombrar al presidente, rectores y otros funcionarios; considerar el presupuesto universitario, establecer las normas generales para la concesión de becas y cualquier otra ayuda económica del sistema universitario.  Art. 3 de la Ley de la Universidad de Puerto Rico, 18 LPRA sec. 602.

De igual forma, el Art. 5 de la Ley de la Universidad de Puerto Rico, 18 LPRA sec. 604, establece que: la Junta nombrará al presidente de la Universidad de Puerto Rico. Quien será el director del sistema universitario y el representante de la Junta. Entre los deberes del presidente de la UPR está en [h]acer cumplir los objetivos, normas, reglamentos y planes presupuestarios y el desarrollo de la Universidad.  A su vez el Reglamento 5479, mejor conocido como el *Reglamento General de la Universidad de Puerto Rico* (Reglamento UPR) dispone que el presidente de la UPR será la principal autoridad ejecutiva de sistema universitario. Sec. 14.3 del Art. 14 del Reglamento UPR.

Por otra parte, la Junta aprobó la Certificación 72 sobre la *Política para la Concesión de Becas Presidenciales para Estudios Doctorales y Postdoctorales de la Universidad de Puerto Rico.* La cual, se estableció con el propósito de dotar a la UPR de recursos docentes e investigativos de excelencia requeridos para atender las necesidades de la institución. Además, la Certificación 72, contiene las *Normas Complementarias para la Implantación de la Política de Concesión de Becas Presidenciales para Estudios Doctorales y Postdoctorales de la Universidad de Puerto Rico.* Dichas normas establecen la política, objetivos y el procedimiento para llevar a cabo la autorización de las Becas Presidenciales.

En lo pertinente, el Art. III de las *Normas Complementarias* establece las:

B. Prioridades en la concesión de becas

1. El programa de Becas Presidenciales apoyará a profesores e investigadores en la obtención de grados terminales en las disciplinas. A tales fines, otorgará o complementará ayuda económica para:

a. Proseguir el grado de doctor o un título terminal equivalente en áreas que capaciten al becario para las materias que enseña, investiga o atiende en gestiones de servicio; o

b. proseguir un grado de maestro que sea requerido para obtener el grado de doctor o título terminal equivalente que el becario se haya comprometido a completar; o

c. realizar estudios postdoctorales.

2. En todo caso los estudios serán en instituciones fuera de Puerto Rico de connotado prestigio, acreditadas y reconocidas [...]

3. El programa apoyará las recomendaciones consignadas por los rectores de los candidatos que comenzarán o continuarán grados de doctor o títulos terminales equivalentes o estudios postdoctorales en áreas de estudios de particular interés para la universidad y para quienes comprometen una plaza docente de éstos cumplir con los requisitos del programa de estudio para el que sean becados.

4. El programa, además, apoyará prioritariamente el compromiso de los recintos y unidades de la universidad con el cumplimiento de los estándares de excelencia de acreditación institucional, acreditación especializada y de otros procesos afines, así como su cumplimiento con la normativa universitaria y los requerimientos de ley aplicables a las instituciones de educación superior y a la práctica de los profesores.

5. En casos extraordinarios, que queden debidamente acreditados, el presidente podrá conceder la Beca Presidencial a puertorriqueños que interesen cursar fuera de Puerto Rico en programas de alto prestigio, programas académicos que atienden necesidades del país o de la universidad, no empecé a que no cumplan los requisitos de las prioridades 3 y 4 de esta sección.

Por otra parte, el Art. VI de las *Normas Complementarias* establece la recomendación de los candidatos:

A. Recomendación de los rectores y las rectoras:

1. [...]

B. Recomendación del Comité Institucional de Beca Presidencial:

El Comité Institucional de Beca Presidencial recibirá las recomendaciones de los rectores y constatará:

1. Que el área de estudio corresponda con el plan de desarrollo de la universidad y de la unidad proponente.

2. Que la institución de educación superior en la que el candidato propone cursar estudios esté acreditada o reconocida por las autoridades pertinentes; y

3. De no ser el candidato empleado regular de la institución, que la unidad tiene disponible y consigna una plaza docente en la cual le ubicara una vez complete el grado para que pueda prestar los servicios profesionales a la universidad [...].

Así las cosas, el Art. VII establece los trámites para la solicitud de la beca:

En específico, el inciso (B) indica la documentación requerida:

1. Solicitud inicial

a. Carta de endoso del rector en la cual consigna el área de estudios de particular interés para la universidad [...].

b. Certificación o evidencia de ayudas económicas que recibirá para fines de estudios de la unidad u otras fuentes.

c. Un ensayo
   [...]

d. Carta de admisión de la institución en la que espera estudiar.

e. Comprobante de la solicitud de copia fiel de expediente académico [...]

f. Evidencia de ser ciudadano de los Estados Unidos o haber obtenido del Gobierno Federal el estatus de residente.

g. Copia por el Departamento de Hacienda de la última planilla de contribución [...].

h. Nombre e información que se solicite de personas a servir como fiadores solidarios.

i. Declaración jurada en la cual el candidato se compromete a utilizar la ayuda económica para fines de cubrir los gastos de estudios conducentes al grado propuesto.

Además, el precitado artículo en el inciso (3) detalla acerca de la evaluación del Comité Institucional de Beca Presidencial:

a. El Comité evaluará cada solicitud y verificará que los candidatos cumplan con las disposiciones establecidas en la Política y Normas aplicables al programa de Becas Presidenciales para estudios doctorales y postdoctorales de la UPR.

b. El Comité verificará que el formulario de solicitud esté completo y acompañado de todos los documentos requeridos.

c. La renovación y concesión de beca está sujeta a la evaluación del progreso académico evidenciado por el becario y la disponibilidad de recursos económicos.

Por último, el Art. VIII de la *Normas Complementarias* dispone que, el presidente de la universidad tendrá la autoridad de otorgar,

renovar, denegar, suspender, o cancelar las becas presidenciales después de haber recibido las recomendaciones del Comité Institucional de Beca Presidencial.

**D.**

**Doctrina Constitucional sobre la Doble Exposición**

La protección constitucional contra la doble exposición cobija a todo imputado de delito en la medida en que se le garantiza no ser "puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 343. Véase, *Pueblo v. Sanchez Valle,* 192 DPR 594, 602 (2015). Asimismo, la Enmienda Quinta de la Constitución de Estados Unidos establece que nadie podrá "ser sometido por el mismo delito dos veces a un juicio [...]". Emda. V, Const. EE. UU., LPRA, Tomo 1, ed. 2008, pág. 189. Véase *Ohio v. Johnson,* 467 US 493 (1984).

Para que se active la protección constitucional contra la doble exposición tienen que cumplirse varios requisitos. En primer lugar, los procedimientos celebrados contra el acusado tienen que ser de naturaleza penal. También, es necesario que se haya iniciado o celebrado un primer juicio bajo un pliego acusatorio válido y en un tribunal con jurisdicción. Por último, el segundo proceso al cual se somete al individuo tiene que ser por el mismo delito por el cual ya fue convicto, absuelto o expuesto. *Pueblo v. Sanchez Valle,* págs. 602-603.

**III.**

Por estar íntimamente relacionados entre sí, discutiremos el primer y segundo señalamiento de error en conjunto. En el presente caso, el recurrente aduce que erró la OEG al concluir una infracción a los incisos (b) y (r) del Art. 4.2 de la Ley de Ética Gubernamental, *supra,* cuando no se probó mediante

prueba clara, robusta y convincente que incumplió con algún deber impuesto del cual ocasionara la pérdida de fondos públicos.

Entre los requisitos para que se configure una violación al inciso (b) del Art. 4.2 de la Ley de Ética Gubernamental, *supra,* son necesarios los siguientes elementos: (1) que se trate de un servidor público; (2) que utilice los deberes y las facultades de su cargo, la propiedad o los fondos públicos para obtener, directa o indirectamente; (3) para él o para una persona privada o negocio; (4) cualquier beneficio que no esté permitido en ley.

En el presente caso, allá para el año 2015, el recurrente citó a los rectores de las unidades de la UPR y les explicó que se estaría otorgando la Beca Presidencial nuevamente. Así las cosas, los rectores eran los llamados a recomendar a los candidatos que se evaluarían para recibir las Becas Presidenciales.

Entre los requisitos que se establecieron para la concesión de dichas becas los candidatos debían: (1) proseguir estudios doctorales y postdoctorales; (2) en una universidad fuera de Puerto Rico y de alto prestigio; (3) los estudios debían realizarse en un área de prioridad para la UPR; (4) la unidad universitaria debía tener una plaza disponible para ofrecerle al candidato una vez culminara sus estudios; (5) y, debía entregar todos los documentos requeridos en la solicitud dentro de la fecha límite establecida.

Además, en casos extraordinarios, que queden debidamente acreditados, el presidente podrá conceder la Beca Presidencial a puertorriqueños que interesen cursar fuera de Puerto Rico en programas de alto prestigio y, programas académicos que atiendan necesidades del país o de la universidad, aunque estos no cumplan los requisitos de las prioridades 3 y 4 de las *Normas Complementarias.*

En el caso ante nos, la Sra. Sánchez Sepúlveda solicitó la Beca Presidencial para hacer un doctorado en urbanismo en la

Universidad Politécnica de Cataluña en España. En la primera evaluación de la solicitante, el Comité decidió no recomendarla porque incumplió con varios de los requisitos necesarios para la concesión de la beca. A saber: (1) su área de estudios no era de prioridad para la UPR; (2) no se comprobó que la Universidad Politécnica de Cataluña es una de alto prestigio; (3) no había una plaza docente en la escuela de arquitectura de la UPR; (4) y la solicitante no entregó todos los documentos de la solicitud dentro de la fecha límite establecida.

No obstante, una vez entregó todos los documentos, el Comité la evaluó por segunda vez y sostuvo su decisión de no recomendarla para la Beca Presidencial, ya que: (1) su área de estudios no era de prioridad para la UPR; (2) no se comprobó que la Universidad Politécnica de Cataluña es una de alto prestigio; (3) no había una plaza docente en la escuela de arquitectura para cuando terminara sus estudios.

Cabe destacar que, las áreas de prioridad de estudios seleccionadas por los rectores de cada unidad fueron las siguientes: estudio de trabajo y las relaciones laborales, cooperativismo, la economía solidaria, educación especial y servicios diferenciados, evaluación institucional y finanzas públicas.

Ahora bien, al analizar el inciso (b) del Art. 4.2 de la Ley de Ética Gubernamental, *supra,* podemos concluir que: el recurrente era un empleado público, el cual utilizó los deberes y facultades de su cargo para concederle a la Sra. Sánchez Sepúlveda una Beca Presidencial, aunque ésta no fue recomendada por el Comité para recibir tal subvención. Por otro lado, no podemos concluir el presente caso como uno extraordinario. Ya que, el Sr. Walker Ramos no acreditó los motivos para la concesión de la beca, y tampoco demostró que la Universidad Politécnica de Cataluña sea una de alto prestigio.

En consecuencia, concluimos que la OEG demostró mediante prueba clara, robusta y convincente que el recurrente infringió el inciso (b) del Art. 4.2 de la Ley de Ética Gubernamental, *supra.*

Por otra parte, para que se configure una infracción al inciso (r) del Art. 4.2 de la Ley de Ética Gubernamental, *supra*, deben concurrir los siguientes elementos: (1) Un servidor público (2) no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, (3) si con ello ocasiona la pérdida de fondos públicos o produce daño a la propiedad pública.

Previo a la concesión de la Beca Presidencial, se establecieron las *Normas Complementarias*, producto de la Certificación 72 de la Junta. Mediante la cual, se estableció que al conceder la Beca Presidencial a un solicitante que no cumpla con todos los requisitos establecidos en las *Normas Complementarias*, el presidente debe acreditar los motivos de dicha concesión.

En el caso ante nos, el presidente como servidor público no acreditó los motivos por el cual le concedió la Beca a la Sra. Sánchez Sepúlveda, aunque la misma no cumplía con todos los requisitos de las *Normas Complementarias*. Asunto que eventualmente, les causó pérdidas a los fondos públicos a través de la UPR. En consecuencia, no erró la OEG al determinar que el recurrente infringió (r) del Art. 4.2 de la Ley de Ética Gubernamental, *supra.*

En su tercer señalamiento de error, el recurrente alegó que erró la OEG al concluir que el recurrente cometió una infracción al inciso (s) del Art. 4.2 de la Ley de Ética Gubernamental, *supra.*

El inciso (s) del Art. 4.2 de la Ley de Ética Gubernamental, *supra,* dispone que: [u]n servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental. Es decir, el precitado estatuto, penaliza el hecho de que un servidor público lleve a cabo acciones que pongan en duda la imparcialidad e integridad de la función gubernamental. Esta

expresión, en esencia, está dirigida a sancionar aquellas acciones que aparenten perjudicar, o de alguna manera estropear, la confianza del público en sus instituciones gubernamentales. *OEG v. Martínez Giraud, supra*, págs. 95-96.

En el presente caso, es un hecho incontrovertible que, el recurrente, otorgó una Beca Presidencial a la Sra. Sánchez Sepúlveda, la cual, no cumplía con los requisitos para recibir tal beneficio. Tal acción, puso en duda la confianza del pueblo en la Universidad de Puerto Rico al otorgar la Beca Presidencial a un candidato que no cumplía los requisitos para ello, sin acreditar los motivos. [14] Este hecho, es elemento suficiente para infringir el inciso (s) del Art. 4.2 de la Ley de Ética Gubernamental, *supra.* Por tanto, no erró la OEG.

En atención a lo anterior, es preciso recordar que el alcance de la revisión judicial de una determinación administrativa requiere que los tribunales confirmemos las determinaciones de hechos de una agencia administrativa, si están sostenidas por evidencia sustancial que obre en el expediente administrativo. Además, se ha sostenido que las conclusiones e interpretaciones de los organismos especializados merecen gran consideración y respeto. En este caso, el recurrente no logró derrotar la presunción de corrección que cobija la determinación administrativa de la cual recurre; ni pudo señalar otra evidencia que obrase en el expediente administrativo para demostrar que la agencia actuó arbitraria o ilegalmente.

Así pues, no podemos perder de perspectiva que los tribunales estamos llamados a ejercer un juicio independiente al evaluar las conclusiones de derecho y las interpretaciones que realizan los organismos administrativos sobre la ley que le corresponde administrar. Así, revisadas las conclusiones de derecho en todos sus

---

[14] Apéndice 16 del Recurso de Revisión Judicial, Págs. 1869-1874.

aspectos, reiteramos que no encontramos nada en el expediente del presente caso, que nos motive a concluir que la agencia recurrida actuó de manera arbitraria, ilegal o irrazonable, o de manera tal que sus acciones constituyeron un abuso de discreción.

Finalmente, como último y cuarto señalamiento de error, el recurrente sostiene que, erró la OEG al continuar con el procedimiento administrativo en su contra, en contravención a la protección constitucional contra la doble exposición, por tratarse de los mismos delitos u ofensas por los cuales fue absuelto en un procedimiento criminal previo.

La protección constitucional contra la doble exposición cobija a todo imputado de delito en la medida en que se le garantiza no ser "puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II, Sec. 11, Const. ELA. Para que se active tal protección tienen que cumplirse varios requisitos. Entre ellos, ambos procedimientos celebrados contra el acusado tienen que ser de naturaleza penal. *Pueblo v. Sanchez Valle, supra,* pág. 602.

Por otro lado, el Tribunal Supremo ha expresado que, la acción criminal es independiente de la administrativa y, no está la una supeditada a la otra. *Mundo Hance v. Tribunal,* 101 DPR 302, 204 (1943). Además, ambos procedimientos, aunque nazcan de una misma conducta, requieren diferentes grados de prueba. Íd. pág. 206. Así pues, en el procedimiento criminal el *quatum* de prueba es más allá de duda razonable. Sin embargo, en el procedimiento administrativo instado por la OEG el *quatum* es de prueba clara, robusta y convincente.

En el presente caso, el recurrente recibió varias multas por parte de la OEG, un procedimiento administrativo completamente independiente del proceso criminal. Ambos procedimientos, aunque nazcan de una misma conducta, requieren diferentes grados de prueba. Las multas impuestas por la OEG hacia un funcionario

público que incumplió con su deber ministerial de cuidar los fondos públicos no está limitada a actos criminales. De la misma forma, alguna infracción por parte de un funcionario público a la Ley de Ética Gubernamental no tiene que ser probada más allá de duda razonable. Además, para que se active la protección constitucional sobre la doble exposición, ambos casos deben ser de naturaleza criminal. Por lo tanto, no se cometió el error señalado.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte del presente dictamen, *se confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones